UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CASUALTY COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. _____ ) |
| JOLIET PROFESSIONAL BASEBALL CLUB, LLC, and JEREMY GORSKY, | ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY RELIEF**

NOW COMES Plaintiff, NATIONAL CASUALTY COMPANY, INC. ("NCC"), by and through its attorneys, Karbal, Cohen, Economou, Silk & Dunne, LLC, and for its Complaint for Declaratory Relief against JOLIET PROFESSIONAL BASEBALL CLUB, LLC ("Joliet") and JEREMY GORSKY ("Gorsky"), states as follows:

**INTRODUCTION**

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. Plaintiff seeks a determination of the parties' rights and obligations under certain insurance policies between NCC and Joliet with respect to the Underlying Litigation brought by Gorsky against Joliet. This controversy arises out of claims against Joliet by Gorsky, individually and as a representative of a proposed class of similarly situated persons, in which Gorsky alleges that Joliet violated the Fair and Accurate Credit Transactions Act of 2003, U.S.C. §1681c(g). The claims against Joliet are contained in the lawsuit captioned *Jeremy Gorsky v. Joliet Professional Baseball Club, LLC, d/b/a Joliet Jackhammers*, Case No. 09-CV-4266, currently pending in the United States District Court, Northern District of Illinois, Eastern

Division (the "Underling Litigation"). Disputes exist between the parties regarding whether there is coverage for the Underlying Litigation and whether Plaintiff has a duty to defend and indemnify Joliet in the Underlying Litigation. Consequently, Plaintiff seeks a declaration that: (a) NCC policies do not provide coverage for Joliet's alleged violations of the Fair and Accurate Credit Transaction Act ("FACTA"); (b) NCC has no duty to defend Joliet in the Underlying Litigation because there is no coverage under the policies; and (c) NCC has no duty to indemnify Joliet in the Underlying Litigation because there is no coverage under the policies.

**PARTIES**

2. NCC is a Wisconsin corporation with its principal place of business in Arizona.

3. Joliet owns and/or operates a minor league baseball team and is an Illinois limited liability company. Upon information and belief, the members of Joliet were Illinois residents and citizens when the entity was organized and remain so today. Upon information and belief, Joliet's members are: Thomas J. Lambrecht; Peter A. Ferro, Jr.; Michael W. Hansen; William J. McEnery; Robert W. Kegley; William J. Sabo; Charles P. Hammersmith, Jr.; John G. Costello; and Joseph J. Canfora.

4. Jeremy Gorsky is a resident and citizen of the State of Illinois.

5. Gorsky, as a claimant against Joliet, has or may have an interest in the subject matter of this litigation that might be affected by the declaratory relief sought by NCC; accordingly, Gorsky is named as a nominal defendant in this declaratory judgment action.

6. In the event Gorsky agrees to be bound by the final judgment in this declaratory judgment action, Plaintiff will voluntarily dismiss Gorsky from this action.

**JURISDICTION AND VENUE**

7. This declaratory judgment action is brought pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8. An actual justiciable controversy exists between NCC and Joliet within the meaning of 28 U.S.C. §2201 regarding the scope and extent of insurance coverage provided under the NCC policies, as more particularly described below.

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this suit is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The potential cost of defense and indemnity owing to Joliet will exceed $75,000 if coverage for the claims asserted by Gorsky in the Underlying Litigation is found to exist under the NCC policies at issue.

10. Venue is proper in this court pursuant to 28 U.S.C. §1391(a) and as a substantial part of the events or omissions giving rise to this action occurred in this district.

**UNDERLYING LITIGATION**

11. On July 15, 2009, Mr. Gorsky filed a putative class action complaint in the United States District Court, Northern District of Illinois, Eastern Division, claiming that Joliet violated the Fair and Accurate Credit Transaction Act. (A copy of the complaint in the Underlying Litigation is attached hereto and incorporated herein as Exhibit A.) The complaint alleges that wrongdoing resulted when Joliet printed Mr. Gorsky's credit card expiration date on credit or debit receipts provided at the point of sale or transaction. Specifically, Mr. Gorsky alleges that, on July 9, 2009, he received at the Joliet Stadium in Joliet, Illinois, a computer-generated receipt which displayed the expiration date of his credit card.

12. Mr. Gorsky alleges that he brings the action against Joliet on behalf of a class pursuant to Federal Rule of Civil Procedure 23. Mr. Gorsky alleges that the class includes all persons to whom Joliet provided an electronically printed receipt at the point of transaction after June 3, 2008, which receipt displayed the expiration date of the cardholder's credit card or debit card number.

13. Mr. Gorsky alleges that Joliet recklessly disregarded the FACTA's requirements and continued to use cash registers or other machines or devices that printed receipts in violation of FACTA.

14. Mr. Gorsky's complaint seeks statutory damages of $100 to $1,000 per violation, attorneys' fees, litigation expenses and costs, and any such further relief as the court may deem proper, including punitive damages.

## **THE POLICIES**

15. NCC issued general liability policy, Policy KKO0000000391800, to Joliet effective May 7, 2008 to May 7, 2009. (A true and correct copy of the policy is attached hereto and incorporated herein as Exhibit B.) NCC also issued general liability policy, Policy No. KRO 0000000391801, to Joliet effective from May 7, 2009 to May 7, 2010. (A true and correct copy of the policy is attached hereto and incorporated herein as Exhibit C.) The policies contain a limit of $1,000,000 each occurrence and $1,000,000 for personal and advertising injury under the commercial general liability coverage part.

16. NCC also issued an excess policy, Policy XKO0000000392000, to Joliet effective May 7, 2008 to May 2, 2009. (A true and correct copy of that policy is attached hereto and incorporated herein as Exhibit D.) That policy provides excess liability coverage limits of $9,000,000 each occurrence or accident in excess of the primary limits provided in the liability

policy. NCC also issued an excess policy, Policy No. XKO 0000000392001, to Joliet effective from May 7, 2009 to May 7, 2010 which provides excess liability coverage limits of $4,000,000 each occurrence or accident in excess of the primary limits provided in the primary policy. (A true and correct copy of that policy is attached hereto and incorporated herein as Exhibit E.) The excess policies follow form to the general liability policies and, thus, the relevant terms, conditions, definitions and exclusions in both the general liability policies and the excess liability policies are the same with respect to the allegations set forth in the Underlying Litigation.

17. The primary policies contain the following relevant coverage terms, conditions, definitions and exclusions:

SECTION I – COVERAGES

COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period…

COVERAGE B-PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured

5

against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amounts we will pay for damages is limited as described in Section III-Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C…

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

SECTION V - DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease.

\* \* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one of more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution or abuse of process;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Any publication of material including, but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e.  Any publication of material, including but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that violates a person's right of privacy;

  f.  The use of another's advertising idea in your "advertisement"; or

  g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \* \*

  17.  "Property damage" means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it…

  18.  The policy also contained the following exclusions with respect to Coverage B for Personal and Advertising Injury Liability:

  **2.**  **Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \* \*

**c. Material Published Prior to the Policy Period**
"Personal and advertising injury" arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, whose first publication took place before the beginning of the policy period.

  19.  The policies were also amended to include an "exclusion-violation of statutes that govern e-mails, fax, phone calls or other methods of sending material information" pursuant to Form CG 00 67 03 05. That exclusion states bars coverage for:

7

"personal and advertising injury": arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(a) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
(b) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
(c) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## DEMAND FOR COVERAGE AND RESERVATION OF RIGHTS

20.     On or about September 1, 2009, Joliet tendered the Gorsky Complaint to NCC seeking coverage under the policies.

21.     By letter dated September 24, 2009, NCC acknowledged Joliet's tender of the Underlying Litigation and agreed to provide Joliet with a defense pursuant to a full reservation of rights.

## COUNT I – Declaratory Judgment

22.     Plaintiff hereby incorporates and realleges the allegations in Paragraphs 1 through 21 as if fully set forth herein.

23.     There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Plaintiff and Joliet concerning whether the policies provide coverage for the Underlying Litigation.

24.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§2201 through 2202, Plaintiff in good faith requests the Court to declare the following:

    a.     That there is no coverage under the Plaintiff's policies for Joliet with respect to the Underlying Litigation; and

    b.     That Plaintiff has no obligation to defend or indemnify Joliet with respect to the Underlying Litigation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment as follows:

1.  For judgment declaring that NCC has no duty to defend Joliet in the Underlying Litigation;

2.  For judgment declaring that Plaintiff has no duty to indemnify Joliet in the Underlying Litigation; and

3.  For such other and further relief as this Court may deem just and proper.

Dated: February 5, 2010

Respectfully submitted,

**NATIONAL CASUALTY COMPANY, INC.**

By: s:/Rory T. Dunne
One of Their Attorneys

Roderick T. Dunne
Linda J. Carwile
KARBAL, COHEN, ECONOMOU,
SILK & DUNNE, LLC
200 South Michigan, 20th Floor
Chicago, Illinois 60604
(312) 431-3700
(312) 431-3670 Fax

and

Pro Hac Vice Pending:
Bradley M. Jones
Amy J. Woodworth
MEAGHER & GEER, PLLP
33 South Sixth Street, Suite 4400
Minneapolis, MN 55402
(612) 338-0661
(612) 338-8384 Fax