# EXHIBIT C
# (Part 3 of 3)

**POLICY NUMBER: KKO0000000391801**
**AAIS**
**IM 7206 11 04**
**Page 1 of 6**

# COMPUTER COVERAGE
# SCHEDULE OF COVERAGES

(The information required below may be indicated on
a separate schedule or supplemental declarations.)

## DESCRIBED PREMISES

Loc.
No.                            **LOCATIONS**


0001          ONE MAYOR ART SCHULTZ DRIVE, JOLIET, IL  60432


Check if applicable:

[   ] Attach Additional Locations Schedule to schedule more locations

**IM 7206 11 04**

Copyright, American Association of Insurance Services, Inc., 2004

## LOCATION LIMITS

### "Hardware"

Loc.          Loc.
No.           No.

0001       $    50,700

### "Programs and Applications"
### and
### "Media"

Loc.          Loc.
No.           No.

### Income Coverage

Loc.          Loc.
No.           No.

**Income Coverage Options** (check one)

- Earnings and Extra Expense          [ ]

- Extra Expense Only                  [ ]

- Income Coverage Not Provided        [ X ]

Copyright, American Association of Insurance Services, Inc., 2004

**COVERAGE EXTENSIONS**

Additional Debris Removal Expenses

Emergency Removal                                    days

Emergency Removal Expenses

Electrical and Power Supply Disturbance

-    500 Feet Limitation (check one)

[  ]   Not Waived
[  ]   Waived

Fraud and Deceit

Mechanical Breakdown Coverage

**SUPPLEMENTAL COVERAGES**

Acquired Locations

Earthquake Coverage (check one)

        -       Coverage Provided              [  ]

        -       Coverage Not Provided          [ X ]

        -       Refer To Earthquake, Flood and
        Sewer Backup Endorsement               [  ]

Flood Coverage (check one)

        -       Coverage Provided              [  ]

        -       Coverage Not Provided          [ X ]

        -       Refer To Earthquake, Flood
                and Sewer Backup Endorsement   [  ]

Newly Purchased or Leased Hardware

Off-Site Computers

Pollutant Cleanup and Removal

Property In Transit

Proprietary Programs and Data Records

**IM 7206 11 04**

Copyright, American Association of Insurance Services, Inc., 2004

**SUPPLEMENTAL COVERAGES** (cont.)

Sewer Backup (check one)

- Coverage Provided                                    [  ]

- Coverage Not Provided                              [ X]

- Refer To Earthquake, Flood
  and Sewer Backup Endorsement              [  ]

Software Storage

Virus and Hacking Coverage

-    Limit Any One Occurrence

-    Limit Each Separate 12 month Period

**INCOME COVERAGE EXTENSIONS**

Interruption by Civil Authority                          days

Period of Loss Extension                                days

**SUPPLEMENTAL INCOME COVERAGES**

Acquired Locations

Earthquake Coverage (check one)

- Coverage Provided                                    [  ]

- Coverage Not Provided                              [ X]

- Refer To Earthquake, Flood and
  Sewer Backup Endorsement                       [  ]

Flood Coverage (check one)

- Coverage Provided                                    [  ]

- Coverage Not Provided                              [ X]

- Refer To Earthquake, Flood
  and Sewer Backup Endorsement              [  ]

---

IM 7206 11 04

Copyright, American Association of Insurance Services, Inc., 2004

**SUPPLEMENTAL INCOME COVERAGES** (cont.)

Off Premises Utility Service Interruption

-   Limit

-   Overhead Transmission Lines Excluded (check if applicable)          [  ]

-   Waiting Period                                              hours

Property In Transit

Sewer Backup (check one)

  - Coverage Provided                          [  ]

  - Coverage Not Provided                       [ X ]

  - Refer To Earthquake, Flood
    and Sewer Backup Endorsement               [  ]

Virus and Hacking Coverage

-   Limit Any One Occurrence

-   Limit Each Separate 12 month Period

-   Waiting Period                                              hours

**DEDUCTIBLE**

                                            Deductible Amount
For all covered perils unless a
different deductible is indicated below        $       1,000

Earthquake and Volcanic Eruption

"Flood"

"Mechanical Breakdown", "Electrical
Disturbance", and "Power Supply Disturbance"

Copyright, American Association of Insurance Services, Inc., 2004

**COINSURANCE**

"Hardware", "Media", and "Programs and Applications"

[  ]    Not Applicable

[ X ]    100%          90%          80%                      %

Income Coverage

[ X ]    Not Applicable

[  ]    100%          90%          80%                      %

**COVERAGE OPTION**

Valuation (check one)

[  ]    Actual Cash Value Applies

[ X ]    Replacement Cost

Income Coverage Waiting Period (check one)

[ X ]    Not Applicable

[  ]    Waiting Period                                    hours

**OPTIONAL COVERAGES AND ENDORSEMENTS**

Copyright, American Association of Insurance Services, Inc., 2004

**POLICY NUMBER: KKO0000000391801**
**AAIS**
**IM 7201 10 02**
**Page 1 of 24**

# COMPUTER COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Computer Coverage. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "schedule of coverages".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Business" means the usual business operations occurring at a premises described on the "schedule of coverages".

4. "Computer hacking" means an unauthorized intrusion:

   a. by an individual or group of individuals, whether employed by "you" or not, into "hardware", "software", or a computer network; and

   b. that results in but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) observation, scanning, or copying of "data records", "programs and applications", and "proprietary programs";
      4) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or
      5) denial of access to or denial of services from "your" "hardware" or "your" computer network.

5. "Computer virus" means the introduction of any malicious, self-replicating electronic data processing code or other code:

   a. into "hardware" or "software"; and

   b. that is intended to result in, but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware" or "media" used with "hardware"; or
      4) denial of access to or denial of services from "your" "hardware" or "your" computer network.

6. "Data records" means files, documents, and information in an electronic format and that are stored on "media".

---

IM 7201 10 02

Copyright, American Association of Insurance Services 2002

7.  "Electrical disturbance" means electrical or magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings.

8.  "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

9.  "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

    a.  **Hardware Includes** -- "Hardware" includes but is not limited to:

        1)  mainframe and mid-range computers and network servers;
        2)  personal computers and workstations;
        3)  laptops, palmtops, notebook PCs, other portable computer devices and accessories including, but not limited to, multimedia projectors; and
        4)  peripheral data processing equipment, including but not limited to, printers, keyboards, monitors, and modems.

    b.  **Hardware Does Not Include** -- "Hardware" does not include:

        1)  "software"; and
        2)  "off-site server" and "on-site server".

10. "Limit" means the amount of coverage that applies.

11. "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout.

12. "Media" means processing, recording, or storage media used with "hardware". This includes but is not limited to films, tapes, cards, discs, drums, cartridges, or cells.

13. "Off-site server" means a server for "your" Web site:

    a.  that is not at a premises described on the "schedule of coverages"; and

    b.  that is being maintained and/or operated by an independent contractor acting as "your" Web host or "your" Internet service provider that is acting as "your" Web host.

14. "On-site server" means a server for "your" Web site:

    a.  that is at a premises occupied by "you" and described on the "schedule of coverages"; and

    b.  that is being maintained and/or operated by "you" or an independent contractor acting as "your" Web site consultant.

15. "Pollutant" means:

    a.  any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including but not limited to acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

    b.  electrical or magnetic emissions, whether visible or invisible, and sound emissions.

16. "Power supply disturbance" means interruption of power supply, power surge, blackout, or brownout.

17. "Programs and applications" means operating programs and applications that "you" purchase and that are:

    a.  stored on "media"; or

    b.  pre-installed and stored in "hardware".

Copyright, American Association of Insurance Services 2002

18. "Proprietary programs" means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are:

   a. stored on "media"; or

   b. installed and stored in "hardware".

19. "Restoration period" means:

   a. the time it should reasonably take to resume "your" "business" to a similar level of service starting from the date of a physical loss of or damage to covered property at a premises described on the "schedule of coverages" that is caused by a covered peril and ending on the date:

      1) the property should be rebuilt, repaired, or replaced; or
      2) "business" is resumed at a new permanent location.

      This is not limited by the expiration date of the policy.

   b. The "restoration period" also means the increased time required to comply with the enforcement of any ordinance, law, or decree that:

      1) regulates the construction, use, or repair of any property; or
      2) requires the demolition of any property, in part or in whole, not damaged by a covered peril.

      The ordinance, law, or decree must be in force at the time of loss.

      "Restoration period" does not mean the increased time required to comply with the enforcement of any ordinance, law, or decree that requires "you" or anyone else to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of "pollutants".

   c. Only as regards coverage described under Off Premises Utility Service Interruption; Interruption of Web Site (if added to this coverage part by endorsement); and Property In Transit in the Supplemental Income Coverages, "restoration period" also means the time it should reasonably take to resume "your" "business" starting from the date of direct physical loss of or damage caused by a covered peril to:

      1) property not located at a premises described on the "schedule of coverages" and that is owned by a utility, a landlord, or another utility supplier;
      2) "your" Web site operation that is being maintained or operated by and that is located at the premises of an independent contractor or Internet service provider; and
      3) property in transit;

      and ending on the date the property should be rebuilt, repaired, or replaced. This is not limited by the expiration date of the policy.

20. "Schedule of coverages" means:

   a. all pages labeled schedule of coverages or schedules which pertain to this coverage; and

   b. declarations or supplemental declarations which pertain to this coverage.

21. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation.

   Sinkhole collapse does not include the value of the land or the cost of filling sinkholes.

Copyright, American Association of Insurance Services 2002

22. "Software" means "media", "data records", "programs and applications", and "proprietary programs".

Software does not mean "Web site software".

23. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

Falling objects does not include loss to:

a. personal property in the open; or

b. to the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

24. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

25. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

26. "Web site server" means "on-site server" and "off-site server".

27. "Web site software" means the following software that are used in "your" "Web site server":

a. "media";

b. "data records";

c. programs and applications which means operating programs and applications that "you" purchase and that are stored on "media" or pre-installed and stored in "Web site servers"; and

d. proprietary programs which means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are stored on "media" or installed and stored in "Web site servers".

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Hardware** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and similar property of others that is in "your" care, custody, or control.

   b. **Coverage Limitations** -- "We" only cover "hardware" and similar property of others:

      1) when a "limit" for "hardware" is indicated on the "schedule of coverages"; and
      2) while at a premises described on the "schedule of coverages".

2. **Software** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

      1) "media";
      2) "programs and applications"; and

      similar property of others that is in "your" care, custody, or control.

Copyright, American Association of Insurance Services 2002

AAIS
IM 7201 10 02
Page 5 of 24

b. **Coverage Limitations** -- "We" only cover "media", "programs and applications", and similar property of others:

   1) when a "limit" for "media" and "programs and applications" is indicated on the "schedule of coverages"; and

   2) while at a premises described on the "schedule of coverages".

c. **We Do Not Cover** -- Except as provided under Supplemental Coverages, "we" do not cover:

   1) "data records"; and
   2) "proprietary programs".

# INCOME COVERAGE

"We" provide the following coverage unless the coverage is excluded or subject to limitations.

1. **Coverage Options** -- One of the following described coverage options applies when that option is indicated on the "schedule of coverages":

   a. Earnings and Extra Expense; or

   b. Extra Expense only.

2. **Coverage** --

   a. **Covered Property** -- "We" provide the coverages described below during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted by direct physical loss of or damage to covered property at a premises described on the "schedule of coverages" as a result of a covered peril.

b. **Described Premises and Air Conditioning System** -- "We" provide the coverages described below under 3. and 4. during the "restoration period" when "your" "business" is necessarily wholly or partially interrupted as a result of direct physical loss of or damage to:

   1) a premises described on the "schedule of coverages" that prevents "you" from using covered property; or

   2) the air conditioning or electrical systems which are necessary for the operation of covered property and results in a reduction or suspension of "your" "business".

c. **If You Lease Your Premises** -- If "you" lease, rent, or do not own the premises "you" occupy, for the purposes of determining an Income Coverage loss, "your" location is the space that "you" lease, rent, or occupy including, but not limited to, all passageways to "your" location within the building.

3. **Earnings** -- "We" cover "your" actual loss of net income (net profit or loss before income taxes) that would have been earned or incurred and continuing operating expenses normally incurred by "your" "business", including but not limited to payroll expense.

4. **Extra Expense** -- "We" cover only the extra expenses that are necessary during the "restoration period" that "you" would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a covered peril.

   a. **Expenses To Reduce Interruption** -- "We" cover any extra expense to avoid or reduce the interruption of "your" data processing operations and continue operating at a premises described on the "schedule of coverages", replacement location, or a temporary location. This includes expenses to relocate and costs to outfit and operate a replacement or temporary location.

Copyright, American Association of Insurance Services 2002

"We" will also cover any extra expense to reduce the interruption of "business" if it is not possible for "you" to continue operating during the "restoration period".

b. **Expenses To Repair/Restore Property and Information** -- To the extent that they reduce a loss otherwise payable under this coverage, "we" will cover any extra expenses to:

1) repair, replace, or restore any property; and
2) research, replace, or restore information on damaged documents, manuscripts, or records that:

a) are inscribed, printed, or written; or
b) exist on electronic or magnetic media.

## PROPERTY NOT COVERED

1. **Accounts, Bills, or Documents** -- "We" do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation, or other documents except those that are in "software" form and then only in that form.

2. **Checked Luggage** -- "We" do not cover loss resulting from theft or disappearance of a laptop, palmtop, notebook PC, or any portable computer while in transit as checked luggage.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Loaned, Leased, or Rented To Others** -- "We" do not cover property that "you" loan, lease, or rent to others.

5. **Money and Securities** -- "We" do not cover currency, food stamps, lottery tickets not held for sale, money, notes, or securities.

6. **Stock in Trade** -- "We" do not cover property that is "your" stock in trade.

7. **Web Site Servers** -- "We" do not cover "Web site servers" including "Web site software".

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Coverage Extension, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **Debris Removal** --

a. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

Copyright, American Association of Insurance Services 2002

**AAIS**
**IM 7201 10 02**
**Page 7 of 24**

b.  **We Do Not Cover** -- This coverage does not include costs to:

    1)  extract "pollutants" from land or water; or

    2)  remove, restore, or replace polluted land or water.

c.  **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

d.  **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

e.  **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2.  **Electrical and Power Supply Disturbance** --

a.  **Coverage** -- "We" cover direct physical loss to covered property caused by:

    1)  "electrical disturbance"; or
    2)  "power supply disturbance".

b.  **Coverage Limitation** -- "We" only cover loss caused by "electrical disturbance" and "power supply disturbance" if the cause of such disturbance took place within 500 feet of the premises where the loss occurred.

    However, if the "schedule of coverages" indicates that there is no limitation, then the 500 feet limitation described above does not apply to this Coverage Extension.

3.  **Emergency Removal** --

a.  **Coverage** -- "We" pay for any direct physical loss to covered property while it is being moved or being stored to prevent a loss caused by a covered peril.

b.  **Time Limitation** -- This coverage applies for up to 365 days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

4.  **Emergency Removal Expenses** --

a.  **Coverage** -- "We" pay for "your" expenses to move or store covered property to prevent a loss caused by a covered peril.

b.  **Time Limitation** -- This coverage applies for up to 365 days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

c.  **Limit** -- The most "we" pay in any one occurrence for expenses to move or store covered property to prevent a loss is $1,000.

d.  **This Is A Separate Limit** -- The "limit" for Emergency Removal Expenses is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

5.  **Fraud and Deceit** --

a.  **Coverage** -- "We" cover theft of covered property when "you", "your" agents, customers, or consignees are fraudulently induced to part with the covered property:

    1)  to persons who falsely represent themselves as the proper persons to receive the property; or

    2)  by the acceptance of fraudulent bills of lading or shipping receipts.

**IM 7201 10 02**

Copyright, American Association of Insurance Services 2002

b.   **Limit** -- The most "we" pay in any one occurrence for theft of covered property under this Coverage Extension is $1,000.

6.   **Mechanical Breakdown Coverage** -- "We" pay for loss to covered property caused by "mechanical breakdown".

---

# SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a.   is the only "limit" available for the described coverage; and

b.   is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1.   **Acquired Locations** --

a.   **Coverage** -- "We" cover direct physical loss caused by a covered peril to covered property at locations that "you" acquire during the policy period.

b.   **Limit** -- "We" pay up to $250,000 for covered property at locations that "you" acquire.

c.   **Time Limitation** -- This coverage applies for up to 60 days from the date "you" acquire the location or until "you" report the acquired location to "us", whichever occurs first.

However, this coverage does not go beyond the end of the policy period.

d.   **Additional Premium** -- "You" must pay any additional premium due from the date "you" acquire the location.

2.   **Earthquake Coverage** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by earthquake and volcanic eruption to covered property while at a premises described on the "schedule of coverages".

3.   **Flood Coverage** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by "flood" to covered property while at a premises described on the "schedule of coverages".

4.   **Newly Purchased or Leased Hardware** --

a.   **Coverage** -- "We" cover direct physical loss caused by a covered peril to additional "hardware" including pre-installed "programs and applications" that "you" purchase or lease during the policy period.

---

Copyright, American Association of Insurance Services 2002

b.  **Limit** -- The most that "we" pay for any loss under this additional coverage is the least of:

    1)  the actual cash value of the covered property; or

    2)  $250,000.

c.  **Time Limitation** -- "We" extend coverage to the additional "hardware" that "you" purchase or lease for up to 60 days.

    This supplemental coverage will end when any of the following first occur:

    1)  this policy expires;

    2)  60 days after "you" obtain the additional "hardware"; or

    3)  "you" report the additional "hardware" to "us".

d.  **Additional Premium** -- "You" must pay any additional premium due from the date "you" purchase or lease the additional "hardware".

5.  **Off-Site Computers** --

a.  **Coverage** -- "We" cover direct physical loss caused by a covered peril to covered property in the custody of "you", "your" officers, "your" partners, or "your" employees, while:

    1)  at "your" residence or the residence of "your" officers, partners, or employees;

    2)  temporarily at a premises that is not described on the "schedule of coverages"; or

    3)  in transit between a:

        a)  residence or temporary premises; and

        b)  premises described on the "schedule of coverages".

b.  **Limit** -- The most "we" pay in any one occurrence for loss to off-site covered property is $2,500.

6.  **Pollutant Cleanup and Removal** --

a.  **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

b.  **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

c.  **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

    However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

d.  **Limit** -- The most "we" pay for each location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

7.  **Property In Transit** --

a.  **Coverage** -- "We" cover direct physical loss to covered property caused by a covered peril while in transit.

b.  **Limit** -- The most "we" pay in any one occurrence for loss to covered property in transit is $5,000.

8.  **Proprietary Programs and Data Records** --

a.  **Coverage** -- "We" cover the cost of research or other expenses necessary to reproduce, replace, or restore lost files or codes on lost or damaged "data records" and "proprietary programs" and similar property of others that is in "your" care, custody, or control.

Copyright, American Association of Insurance Services 2002

b.  **Coverage Limitations** -- "We" only cover "data records", "proprietary programs", and similar property of others:

   1) while at a premises described on the "schedule of coverages"; and
   2) if the cost of research or other expenses necessary to reproduce, replace, or restore lost files or codes are incurred due to a direct physical loss caused by a covered peril to "data records" and "proprietary programs".

c.  **Limit** -- The most "we" pay in any one occurrence for "data records" and "proprietary programs" is $5,000.

9.  **Rewards** --

a.  **Coverage** -- "We" pay for reward information that leads to a conviction for:

   1) arson,
   2) theft, or
   3) vandalism including, but not limited to, "computer hacking" and "computer virus".

   The conviction must involve a covered loss caused by arson, theft, or vandalism.

b.  **Limit** -- The most "we" pay in any one occurrence for reward information is $1,000.

c.  **Limit Is Not Increased By The Number of Persons Providing Information** -- The amount "we" pay is not increased by the number of persons involved in providing the information.

10. **Sewer Backup and Water Below the Surface** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by:

a.  water that backs up through a sewer or drain; or

b.  water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a described premises.

11. **Software Storage** --

a.  **Coverage** -- "We" cover direct physical loss caused by a covered peril to duplicate and back-up "software" stored at a "software" storage location.

b.  **Coverage Condition** -- Each "software" storage location must be in a separate building which is at least 100 feet away from a premises described on the "schedule of coverages".

c.  **Limit** -- The most "we" pay in any one occurrence for loss to duplicate and back-up "software" is $25,000.

12. **Virus and Hacking Coverage** --

a.  **Coverage** -- "We" cover direct physical loss to covered "hardware" and "software" caused by a "computer virus" or by "computer hacking".

b.  **We Do Not Cover** -- "We" do not cover:

   1) loss of exclusive use of any "data records" or "proprietary programs" that have been copied, scanned, or altered;
   2) loss of or reduction in economic or market value of any "data records" or "proprietary programs" that have been copied, scanned, or altered;

Copyright, American Association of Insurance Services 2002

3)  theft from "your" "data records" or "proprietary programs" of confidential information through the observation of the "data records" or "proprietary programs" by accessing covered "hardware" or "your" computer network without any alteration or other physical loss or damage to the records or programs. Confidential information includes, but is not limited to, customer information, processing methods, or trade secrets; and

4)  except as provided under the Supplemental Income Coverages, denial of access to or services from "your" "hardware" or "your" computer network.

c.  **Limit** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $5,000.

The most "we" pay for all covered losses under this Supplemental Coverage during each separate 12-month period of this policy is $10,000.

## INCOME COVERAGE EXTENSIONS

**Provisions That Apply To Income Coverage Extensions** -- The following Income Coverage Extensions indicate an applicable "limit" or limitation. This "limit" or limitation may also be shown on the "schedule of coverages".

If a different "limit" or limitation is indicated on the "schedule of coverages", that "limit" or limitation will apply instead of the "limit" or limitation shown below.

The following Income Coverage Extensions are part of and not in addition to the applicable Income Coverage "limit".

1.  **Interruption by Civil Authority** --

a.  **Coverage** -- "We" extend "your" coverage for earnings and extra expense to include loss sustained while access to premises described on the "schedule of coverages" is specifically denied by an order of civil authority.

b.  **Coverage Limitation** -- The order of civil authority must be a result of direct physical loss of or damage to property, other than at a premises described on the "schedule of coverages" and must be caused by a covered peril.

c.  **Time Limitation** -- Unless otherwise indicated on the "schedule of coverages", this coverage extension is limited to 30 consecutive days from the date of the order.

2.  **Period of Loss Extension After Business Resumes** --

a.  **Coverage** -- "We" extend "your" coverage for earnings to cover loss from the date the covered property that incurred the loss is rebuilt, repaired, or replaced and "your" data processing operations are resumed until:

1)  the end of 30 consecutive days (unless otherwise indicated on the "schedule of coverages"); or
2)  the date "you" could reasonably resume "your" "business" to the conditions that would generate the earnings amount that would have existed had no loss or damage occurred,

whichever is earlier.

b.  **Coverage Limitation** -- Loss of earnings must be caused by direct physical loss of or damage to property at a premises described on the "schedule of coverages" as a result of a covered peril.

Copyright, American Association of Insurance Services 2002

## SUPPLEMENTAL INCOME COVERAGES

**Provisions That Apply To Supplemental Income Coverages** -- Unless otherwise indicated, the following Supplemental Income Coverages apply separately to each premises described on the "schedule of coverages".

The following Supplemental Income Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

Unless otherwise indicated, a "limit" for a Supplemental Income Coverage provided below is separate from, and not part of, the applicable Income Coverage "limit". The "limit" available for coverage described under a Supplemental Income Coverage:

a. is the only "limit" available for the described coverage; and

b. is not the sum of the "limit" indicated for a Supplemental Income Coverage and the Income Coverage "limit".

The "limit" provided under a Supplemental Income Coverage cannot be combined or added to the "limit" for any other Supplemental Income Coverage or Income Coverage Extension.

1.  **Acquired Locations** --

    a.  **Coverage** -- "We" extend "your" coverage for earnings and extra expense to include direct physical loss to covered property while at locations that "you" acquire during the policy period.

    b.  **Time Limitation** -- This coverage applies for up to 60 days from the date "you" acquire the location or until "you" report the acquired location to "us", whichever occurs first.

However, this coverage does not go beyond the end of the policy period.

    c.  **Additional Premium** -- "You" must pay any additional premium due from the date "you" acquire the location.

    d.  **Limit** -- The most "we" pay in any one occurrence for loss of earnings and incurred extra expense at each newly acquired location is $25,000.

2.  **Earthquake Coverage** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by earthquake and volcanic eruption to covered property while at a premises described on the "schedule of coverages".

3.  **Flood Coverage** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by "flood" to covered property while at a premises described on the "schedule of coverages".

4.  **Off Premises Utility Service Interruption** --

    a.  **Coverage** -- Coverage for earnings and/or extra expense is extended to loss of earnings or extra expenses that "you" incur during the "restoration period" when "your" data processing operations are interrupted due to the interruption of an off premises utility services when the interruption is a result of direct physical loss or damage by a covered peril to property that is not located at a premises described on the "schedule of coverages" and that is owned by a utility, a landlord, or another supplier who provides "you" with:

        1)  power, gas;
        2)  telecommunications, including but not limited to Internet access; or
        3)  water.

Copyright, American Association of Insurance Services 2002

b. **Overhead Transmission Lines Exclusion** -- If the "schedule of coverages" indicates that overhead transmission lines are excluded, coverage under this extension does not include loss to overhead transmission lines that deliver utility service to "you". Overhead transmission lines include, but are not limited to:

1) overhead transmission and distribution lines;
2) overhead transformers and similar equipment; and
3) supporting poles and towers.

c. **Waiting Period Limitation** -- Unless otherwise indicated on the "schedule of coverages", "we" do not pay for "your" loss of earnings under this Supplemental Income Coverage until after the first 24 hours following the direct physical loss of or damage to the property owned by a utility, a landlord, or another supplier. This waiting period does not apply to extra expenses that "you" incur.

d. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Income Coverage is $10,000.

5. **Property In Transit** --

a. **Coverage** -- Coverage for earnings is extended to loss of earnings during the "restoration period" when "your" "business" is interrupted as a result of a direct physical loss, caused by a covered peril, to covered property in transit.

b. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Income Coverage is $5,000.

6. **Sewer Backup and Water Below the Surface** -- If coverage is indicated on the "schedule of coverages", "we" extend "your" coverage for earnings and extra expense to include direct physical loss to covered property caused by:

a. water that backs up through a sewer or drain; or

b. water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a described premises.

7. **Virus and Hacking Coverage** --

a. **Coverage** -- Coverage for earnings and/or extra expense is extended to loss of earnings or extra expenses caused by a "computer virus" or by "computer hacking" that results in:

1) direct physical loss or damage to covered "software" and "hardware"; or
2) denial of access to or services from "your" "hardware" or "your" computer network.

b. **We Do Not Cover** -- "We" do not cover loss of earnings or extra expenses under this Supplemental Income Coverage that results from:

1) loss of exclusive use of any "data records" or "proprietary programs" that have been copied, scanned, or altered;
2) loss of or reduction in economic or market value of any "data records" or "proprietary programs" that have been copied, scanned, or altered;
3) theft from "your" "data records" or "proprietary programs" of confidential information through the observation of the "data records" or "proprietary programs" by accessing covered "hardware" or "your" computer network without any alteration or other physical loss or damage to the records or programs.

Confidential information includes, but is not limited to customer information, processing methods, or trade secrets.

Copyright, American Association of Insurance Services 2002

c. **Waiting Period Limitation** -- Unless otherwise indicated on the "schedule of coverages", "we" do not pay for "your" loss of earnings under this Supplemental Income Coverage until after the first 24 hours following the direct physical loss of or damage to "your" data processing operations. This waiting period does not apply to extra expenses that "you" incur.

d. **Limit** -- The most "we" pay in any one occurrence under this Supplemental Income Coverage is $5,000.

The most "we" pay for all covered losses under this Supplemental Income Coverage during each 12-month period of this policy is $15,000.

## PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

   "We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

   b. **Earth Movement** -- Except as provided under Supplemental Coverages - Earthquake Coverage, "we" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

   "We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, or effusion of a volcano.

   c. **Flood** -- Except as provided under Supplemental Coverages - Flood Coverage, "we" do not pay for loss caused by "flood". However, "we" do cover the resulting loss if fire, explosion, or sprinkler leakage results.

   d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

   e. **Sewer Backup and Water Below the Surface** -- Except as provided under Supplemental Coverages - Sewer Backup and Water Below the Surface, "we" do not pay for loss caused by or resulting from:

      1) water that backs up through a sewer or drain; or
      2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a building or structure.

Copyright, American Association of Insurance Services 2002

But if sewer backup and water below the surface results in fire, explosion, or sprinkler leakage, "we" cover the loss or damage caused by that fire, explosion, or sprinkler leakage.

f.  **War and Military Action** -- "We" do not pay for loss caused by:

1)  war, including undeclared war or civil war; or
2)  a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3)  insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2.  "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a.  **Computer Virus or Computer Hacking** -- Except as provided under Supplemental Coverages - Virus and Hacking Coverage and Supplemental Income Coverages - Virus and Hacking Coverage, "we" do not pay for:

1)  any direct or indirect loss or damage; or
2)  loss of access, loss of use, or loss of functionality

caused by a "computer virus" or by "computer hacking".

b.  **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

1)  "you";
2)  others who have an interest in the property;
3)  others to whom "you" entrust the property;
4)  "your" partners, officers, directors, trustees, or joint adventurers; or
5)  the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

c.  **Electrical and Power Supply Disturbance** -- "We" do not pay for loss caused by "electrical disturbance" or "power supply disturbance" if the cause of such disturbance took place more than 500 feet from the premises where the loss occurred.

However, if disturbance coverage beyond 500 feet is indicated on the "schedule of coverages", then the Electrical and Power Supply Disturbance exclusion described above is deleted.

d.  **Loss of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

This exclusion does not apply to the coverages described under Income Coverages, Income Coverage Extensions, and Supplemental Income Coverages.

Copyright, American Association of Insurance Services 2002

e. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

f. **Temperature/Humidity** -- Except as provided under Utility Interruption, "we" do not pay for loss to covered property caused by:

   1) dryness, dampness, humidity; or
   2) changes in or extremes of temperature.

   However, "we" do pay for loss to covered property that results from a direct physical loss, caused by a covered peril, to the air conditioning system that services covered "hardware".

g. **Voluntary Parting** -- Except as provided under Coverage Extensions - Fraud and Deceit, "we" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a covered peril results, "we" will pay for the resulting loss.

   a. **Contamination, Deterioration, Rust, or Corrosion** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in covered property that causes it to damage or destroy itself.

   This exclusion does not apply to loss caused by "mechanical breakdown".

   b. **Wear and Tear or Obsolescence** -- "We" do not pay for loss caused by wear and tear, depreciation, or obsolescence.

4. "We" do not pay for loss of earnings or extra expenses, as described under Income Coverage, caused by or resulting from one or more of the following:

   a. **Error or Omission In Programming** -- "We" do not pay for extra expense caused by an error or omission in programming or incorrect instructions to "hardware".

   b. **Leases, Licenses, Contracts, or Orders** -- "We" do not cover any increase in loss due to the suspension, lapse, or cancellation of leases, licenses, contracts, or orders.

   However, "we" do cover loss during the "restoration period" if the suspension, lapse, or cancellation results directly from the interruption of "your" "business".

   "We" do not cover any extra expense caused by the suspension, lapse, or cancellation of leases, licenses, contracts, or orders beyond the "restoration period".

   c. **Strikes, Protests, and Other Interference** -- "We" do not cover any increase in loss due to interference by strikers or other persons at a premises described on the "schedule of coverages". This applies to interference with rebuilding, repairing, or replacing the property or with resuming "your" "business".

   d. **Utility Failure** -- Except as provided under Supplemental Income Coverages - Off Premises Utility Service Interruption, "we" do not pay for loss caused by or resulting from the failure of a utility to supply electrical power or other utility service to a described premises, if the failure takes place away from the described premises. "We" do not pay for loss caused by or resulting from the failure of a utility to supply service regardless of the cause of failure.

Copyright, American Association of Insurance Services 2002

e. **Interruption of Web Site** -- "We" do not pay for loss caused by or resulting from the interruption of "your" Web site. "We" do not pay for loss caused by or resulting from the interruption of "your" Web site regardless of the cause of the interruption.

# WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice, including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a. **Payment of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs.

   b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Intent To Continue Business - Income Coverage** -- If "you" intend to continue "your" "business", "you" must resume all or part of "your" "business" as soon as possible.

5. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

6. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

7. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

8. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

9. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

Copyright, American Association of Insurance Services 2002

10. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

# VALUATION

1. **Hardware** -- The following is the value of "hardware":

   a. **Replacement Cost** -- The value of "hardware" will be based on replacement cost without any deduction for depreciation unless Actual Cash Value is indicated on the "schedule of coverages".

      1) **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

      2) **Replacement Cost Does Not Apply Until Repair or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.

      3) **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

   b. **Actual Cash Value** -- When Actual Cash Value is indicated on the "schedule of coverages", the value of "hardware" will be based on the actual cash value at the time of the loss with a deduction for depreciation.

2. **Software** -- The following is the value of "software":

   a. **Programs and Applications** --

      1) **Cost To Reinstall** -- The value of "programs and applications" will be based on the cost to reinstall the "programs or applications" from the licensed discs that were originally used to install the programs or applications.

      2) **If The Original Discs Are Lost** -- If the original licensed discs are lost, damaged, or can no longer be obtained, the value of "programs and applications" will be based on the cost of the most current version of the "programs or applications".

   b. **Proprietary Programs** --

      1) **Cost of Reproduction** -- The value of "proprietary programs" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.

      2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "proprietary programs" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost "proprietary programs".

   c. **Data Records** --

      1) **Cost of Reproduction** -- The value of "data records" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.

      2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "data records" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost files, documents, and records.

Copyright, American Association of Insurance Services 2002

d.  **Media** -- The value of "media" will be based on the cost to repair or replace the "media" with material of the same kind or quality.

3.  **Pair or Set** --

a.  **Reasonable Proportion of Value** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

b.  **Provision Does Not Apply To Software** -- The Pair or Set provision does not apply to "software" that comes in sets. If part of a "software" set cannot be replaced, the loss is considered a total loss of the set.

4.  **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

5.  **Earnings** --

a.  **Determining An Earnings Loss** -- In determining an earnings loss "we" consider:

1)  the experience of "your" "business" before the loss and the probable experience during the time of interruption had no loss occurred;

2)  "your" continuing operating expenses normally incurred by "your" "business", including, but not limited to, payroll expense necessary to resume "business" to a similar level of service that existed before the occurrence of direct physical loss or damage; and

3)  pertinent sources of information and reports including:

a)  "your" accounting procedures and financial records;

b)  bills, invoices, and other vouchers;

c)  contracts, deeds, and liens;

d)  reports on feasibility and status; and

e)  records documenting "your" budget and marketing objectives and results.

b.  **Conditions For Non-Payment of Increased Loss** -- "We" do not pay for any increase in loss due to "your" failure to use reasonable efforts to resume all or part of "your" "business". This includes making use of other locations and property to reduce the loss.

c.  **Loss Payment If You Do Not Resume Your Business** -- If "your" "business" is not resumed as soon as possible, or if it is not resumed at all, the value of loss payment is based on the period of time it would have otherwise taken to resume "your" "business" as soon as possible.

6.  **Extra Expense** -- In determining extra expenses that "you" have incurred, "we" consider the salvage value of any property bought for temporary use during the "restoration period" and it will be deducted from the amount of loss determined for extra expense.

## HOW MUCH WE PAY

1.  **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2.  **Earthquake Period** -- All earthquakes or volcanic eruptions that occur within a 168-hour period will be considered a single event. This 168-hour period is not limited by the policy expiration.

3.  **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

Copyright, American Association of Insurance Services 2002

The deductible may be shown as either an amount or a percentage. When shown as a percentage, the deductible is that percentage of the value of the covered property at the time of the loss.

4. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 3., 5., 6., 7., 8., 9., and 10. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property.

5. **Coinsurance, Hardware, and Software** --

   a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of the covered property that is indicated on the "schedule of coverages".

   b. **How We Determine Our Part of The Loss** -- "Our" part of the loss is determined using the following steps:

      1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
      2) divide the "limit" for covered property by the result determined in 5.a. above;
      3) multiply the total amount of loss, after the application of any deductible, by the result determined in 5.b. above.

   The most "we" pay is the amount determined in 5.c. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

   c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

   d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

   e. **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

6. **Coinsurance, Income Coverage Part** --

   a. **When Coinsurance Applies** -- "We" pay only a part of the loss if the "limit" is less than the coinsurance percentage multiplied by the sum of:

      1) "your" net income (net profit or loss before income taxes); and
      2) continuing operating expenses

      projected for the 12 months following the inception of this policy or the last previous anniversary date of this policy (whichever is later), normally earned by "your" "business".

   b. **How We Determine Our Part of The Loss** -- "Our" part of the loss is determined using the following steps:

      1) multiply the coinsurance percentage by the sum of "your" net income and continuing operating expenses projected for the 12 months following the inception of this policy or the last previous anniversary date of this policy;
      2) divide the "limit" by the figure determined in 1) above;

Copyright, American Association of Insurance Services 2002

3)  multiply the total amount of loss by the figure determined in 2) above.

"We" pay the amount determined in 3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

c.  **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply:

1)  unless a coinsurance percentage is indicated on the "schedule of coverages"; and
2)  to coverage for extra expense.

7.  **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

8.  **Insurance Under More Than One Policy** --

a.  **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

b.  **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

9.  **Income Coverage Limit** -- "We" pay no more than the Income Coverage "limit" indicated on the "schedule of coverages" for any one loss. Payment for earnings and extra expense combined does not exceed the "limit".

10. **Waiting Period** --

a.  **Waiting Period Limitation** -- If an Income Coverage waiting period is indicated on the "schedule of coverages", "we" do not pay for "your" loss of earnings until after the first 24 hours (unless otherwise indicated on the "schedule of coverages") following the direct physical loss of or damage to covered property caused by a covered peril.

This waiting period does not apply to extra expenses that "you" incur.

b.  **Waiting Period Limitation For Civil Authority** -- As regards coverage under Interruption by Civil Authority, coverage under this extension begins:

1)  for earnings, 24 hours (unless otherwise indicated on the "schedule of coverages") after the time the order is issued and ends 30 consecutive days and 24 hours from the date of the order; and
2)  for extra expense, immediately after the time the order is issued, and ends 30 consecutive days and 24 hours from the date of the order.

c.  **Other Waiting Period Limitations** -- The waiting period described under Off Premises Utility Service Interruption and Virus and Hacking Coverage is not deleted nor replaced by the terms of this provision.

## LOSS PAYMENT

1.  **Loss Payment Options** --

a.  **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

1)  pay the value of the lost or damaged property;

Copyright, American Association of Insurance Services 2002

AAIS
IM 7201 10 02
Page 22 of 24

   2)   pay the cost of repairing or replacing the lost or damaged property;

   3)   rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or

   4)   take all or any part of the property at the agreed or appraised value.

   b.   **Notice of Our Intent To Rebuild, Repair, or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2.   **Your Losses** --

   a.   **Adjustment and Payment of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

   b.   **Conditions For Payment of Loss** -- An insured loss will be payable 30 days after:

   1)   a satisfactory proof of loss is received; and

   2)   the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3.   **Property of Others** --

   a.   **Adjustment and Payment of Loss To Property of Others** -- Losses to property of others may be adjusted with and paid to:

   1)   "you" on behalf of the owner; or

   2)   the owner.

   b.   **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1.   **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2.   **Income Coverage (Appraisal)** -- If "you" and "we" do not agree on the amount of net income (net profit or loss before income taxes), payroll expense, and operating expenses, these amounts may be determined by appraisal in accordance with the provisions described above under 1. Appraisal.

IM 7201 10 02

Copyright, American Association of Insurance Services 2002

3. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

4. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

5. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
      2) "your" legal representative.

      This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

6. **Misrepresentation, Concealment, or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

7. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

8. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

9. **Restoration of Limits** -- Except as indicated under Virus and Hacking Coverage, a loss "we" pay under this coverage does not reduce the applicable "limits".

10. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

    "You" may waive "your" right to recover from others in writing before a loss occurs.

11. **Suit Against Us** — No one may bring a legal action against "us" under this coverage unless:

    a. all of the "terms" of this coverage have been complied with; and

Copyright, American Association of Insurance Services 2002

**AAIS**
**IM 7201 10 02**
**Page 24 of 24**

b.   the suit has been brought within two years
     after "you" first have knowledge of the loss.

If any applicable law makes this limitation
invalid, then suit must begin within the shortest
period permitted by law.

12. **Territorial Limits** -- "We" cover property while
    it is in the United States of America, its
    territories and possessions, Canada, and
    Puerto Rico.

Copyright, American Association of Insurance Services 2002

**POLICY NUMBER:** KKO0000000391801
**AAIS**
**IM 7506 04 04**
**Page 1 of 2**

# SCHEDULE OF COVERAGES
## SCHEDULED PROPERTY FLOATER

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

## COVERED PROPERTY

| Item No. | DESCRIBED PROPERTY | | Limit |
|---|---|---|---|
| 0001 | UNSCHEDULED EQUIPMENT | | |
| | (SPORTS EQUIPMENT $50,000 & | | |
| | MISC. EQUIPMENT $8,700) | $ | 58,700 |
| 0002 | UNSCHEDULED MOBILE COMMUNICATION | | |
| | EQUIPMENT | | |
| | | $ | 30,000 |
| 0003 | UNSCHEDULED MISC. UNIFORMS | | |
| | | $ | 50,000 |
| 0004 | UNSCHEDULED EQUIPMENT - | | |
| | PORTABLE FIXTURES | | |
| | | $ | 20,000 |

## COVERAGE EXTENSIONS

Additional Debris Removal Expenses

## SUPPLEMENTAL COVERAGES

Pollutant Cleanup And Removal

IM 7506 04 04

Copyright, American Association of Insurance Services 2004

## DEDUCTIBLE AND COINSURANCE

### DEDUCTIBLE

Deductible Amount

### COINSURANCE

[  ]    Not Applicable

[ X ]    100%___          90% ___          80%___                    %

### OPTIONAL COVERAGES AND ENDORSEMENTS

Copyright, American Association of Insurance Services 2004

**POLICY NUMBER:** KKO0000000391801
**AAIS**
**IM 7500 04 04**
**Page 1 of 11**

# SCHEDULED PROPERTY FLOATER

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Scheduled Property Floater. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1.  The words "you" and "your" mean the persons or organizations named as the insured on the declarations.

2.  The words "we", "us", and "our" mean the company providing this coverage.

3.  "Earth movement" means any movement or vibration of the earth's surface (other than "sinkhole collapse") including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

4.  "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

5.  "Limit" means the amount of coverage that applies.

6.  "Pollutant" means:

    a.  any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

    b.  electrical or magnetic emissions, whether visible or invisible, and sound emissions.

7.  "Schedule of coverages" means:

    a.  all pages labeled schedule of coverages or schedules that pertain to this coverage; and

    b.  declarations or supplemental declarations that pertain to this coverage.

8.  "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

9.  "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

    Falling objects does not include loss to:

    a.  personal property in the open; or

**IM 7500 04 04**

Copyright, American Association of Insurance Services 2004

b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

10. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

11. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

   a. "your" property; or

   b. property of others in "your" care, custody, and control.

2. **Coverage Limitation** -- "We" only cover "your" property and property of others that are described on the "schedule of coverages".

## PROPERTY NOT COVERED

1. **Aircraft Or Watercraft** -- "We" do not cover aircraft or watercraft.

2. **Buildings And Land** -- "We" do not cover buildings or land including land on which covered property is located.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Money And Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

5. **Vehicles** -- "We" do not cover automobiles or any self-propelled vehicles that are designed for highway use.

6. **Waterborne Property** -- "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Coverage Extension, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Copyright, American Association of Insurance Services 2004

AAIS
IM 7500 04 04
Page 3 of 11

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following coverage extensions are not subject to and not considered in applying coinsurance conditions.

**Debris Removal** --

1.  **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

2.  **We Do Not Cover** -- This coverage does not include costs to:

    a.  extract "pollutants" from land or water; or

    b.  remove, restore, or replace polluted land or water.

3.  **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

4.  **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

5.  **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

## SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a.  is the only "limit" available for the described coverage; and

b.  is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

Copyright, American Association of Insurance Services 2004

If coinsurance provisions are part of this policy, the following supplemental coverages are not subject to and not considered in applying coinsurance conditions.

**Pollutant Cleanup And Removal** --

1. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

2. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

3. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

   However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

4. **Limit** -- The most "we" pay for each location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

# PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

# PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

      "We" do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

   b. **Earth Movement Or Volcanic Eruption** -- "We" do not pay for loss caused by any "earth movement" (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano.

      "We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either "earth movement" or eruption, explosion, or effusion of a volcano.

      This exclusion does not apply to covered property while in transit.

   c. **Flood** -- "We" do not pay for loss caused by "flood".

      "We" do cover direct loss by fire, explosion, or sprinkler leakage resulting from "flood".

      This exclusion does not apply to covered property while in transit.

Copyright, American Association of Insurance Services 2004

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer Backup And Water Below The Surface** -- "We" do not pay for loss caused by:

1) water that backs up through a sewer or drain; or
2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a covered building or structure.

"We" do cover direct loss by fire, explosion, or theft resulting from either water that backs up through a sewer or drain or water below the surface of the ground.

This exclusion does not apply to covered property while in transit.

f. **War And Military Action** -- "We" do not pay for loss caused by:

1) war, including undeclared war or civil war; or
2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War And Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Contamination Or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion; decay; fungus; mildew; mold; rot; rust; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

b. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

1) "you";
2) others who have an interest in the property;
3) others to whom "you" entrust the property;
4) "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or
5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

Copyright, American Association of Insurance Services 2004

c. **Electrical Currents** -- "We" do not pay for loss caused by arcing or by electrical currents other than lightning.

But if arcing or electrical currents other than lightning result in a "specified peril", "we" do cover the loss or damage caused by that "specified peril".

d. **Explosion, Rupture, Or Bursting** -- "We" do not pay for loss caused by explosion, rupture, or bursting of steam boilers, steam or gas turbines, steam pipes, or steam engines. This exclusion applies only to loss or damage to the steam boilers, steam or gas turbines, steam pipes, or steam engines in which the loss occurred.

e. **Loss Of Use** -- "We" do not pay for loss caused by or resulting from loss of use, delay, or loss of market.

f. **Mechanical Breakdown** -- "We" do not pay for loss caused by any mechanical, structural, or electrical breakdown or malfunction including a breakdown or malfunction resulting from a structural, mechanical, or reconditioning process.

g. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.

This exclusion does not apply to covered property in the custody of a carrier for hire.

h. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants":

1) unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril"; or
2) except as specifically provided under the Supplemental Coverages - Pollutant Cleanup and Removal.

"We" do cover any resulting loss caused by a "specified peril".

i. **Temperature/Humidity** -- "We" do not pay for loss caused by dryness, dampness, humidity, or changes in or extremes of temperature.

But if dryness, dampness, humidity, or changes in or extremes of temperature results in a "specified peril", "we" do cover the loss of damage caused by that "specified peril".

j. **Theft From An Unattended Vehicle** -- "We" do not pay for theft from an unattended vehicle except when it is securely locked, its windows are fully closed, and there is visible evidence that entry into the vehicle was forced.

This exclusion does not apply to covered property in the custody of a carrier for hire.

k. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

l. **Wear And Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

Copyright, American Association of Insurance Services 2004

## WHAT MUST BE DONE
## IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a. **Payment Of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. "Our" payment of reasonable costs does not increase the "limit".

   b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against.

3. **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

---

Copyright, American Association of Insurance Services 2004

## VALUATION

1. **Actual Cash Value** – The value of covered property is based on the actual cash value at the time of loss (with a deduction for depreciation).

2. **Pair Or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property.

4. Coinsurance --

   a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of the covered property that is indicated on the "schedule of coverages".

   b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

      1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;

      2) divide the "limit" for covered property by the result determined in b.1) above;

      3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

   The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

   c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

   d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

   e. **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

Copyright, American Association of Insurance Services 2004

5.  **Insurance Under More Than One Coverage -
    -** If more than one coverage of this policy
    insures the same loss, "we" pay no more than
    the actual claim, loss, or damage sustained.

6.  **Insurance Under More Than One Policy --**

    a.  **Proportional Share --** "You" may have
        another policy subject to the same "terms"
        as this policy. If "you" do, "we" will pay
        "our" share of the covered loss. "Our"
        share is the proportion that the applicable
        "limit" under this policy bears to the "limit"
        of all policies covering on the same basis.

    b.  **Excess Amount --** If there is another
        policy covering the same loss, other than
        that described above, "we" pay only for
        the amount of covered loss in excess of
        the amount due from that other policy,
        whether "you" can collect on it or not. But
        "we" do not pay more than the applicable
        "limit".

## LOSS PAYMENT

1.  **Loss Payment Options --**

    a.  **Our Options --** In the event of loss
        covered by this coverage form, "we" have
        the following options:

        1)  pay the value of the lost or damaged
            property;
        2)  pay the cost of repairing or replacing
            the lost or damaged property;
        3)  rebuild, repair, or replace the property
            with other property of equivalent kind
            and quality, to the extent practicable,
            within a reasonable time; or
        4)  take all or any part of the property at
            the agreed or appraised value.

    b.  **Notice Of Our Intent To Rebuild, Repair,
        Or Replace --** "We" must give "you" notice
        of "our" intent to rebuild, repair, or replace
        within 30 days after receipt of a duly
        executed proof of loss.

2.  **Your Losses --**

    a.  **Adjustment And Payment Of Loss --**
        "We" adjust all losses with "you". Payment
        will be made to "you" unless another loss
        payee is named in the policy.

    b.  **Conditions For Payment Of Loss --** An
        insured loss will be payable 30 days after:

        1)  a satisfactory proof of loss is received,
            and
        2)  the amount of the loss has been
            established either by written
            agreement with "you" or the filing of
            an appraisal award with "us".

3.  **Property Of Others --**

    a.  **Adjustment And Payment Of Loss To
        Property Of Others --** Losses to property
        of others may be adjusted with and paid
        to:

        1)  "you" on behalf of the owner; or
        2)  the owner.

    b.  **We Do Not Have To Pay You If We Pay
        The Owner --** If "we" pay the owner, "we"
        do not have to pay "you". "We" may also
        choose to defend any suits brought by the
        owners at "our" expense.

Copyright, American Association of Insurance Services 2004

## OTHER CONDITIONS

1.  **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

    If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

    The appraisers will then determine and state separately the amount of each loss.

    The appraisers will also determine the value of covered property items at the time of the loss, if requested.

    If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

    Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2.  **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3.  **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4.  **Estates** -- This provision applies only if the insured is an individual.

    a.  **Your Death** -- On "your" death, "we" cover the following as an insured:

        1)  the person who has custody of "your" property until a legal representative is qualified and appointed; or
        2)  "your" legal representative.

        This person or organization is an insured only with respect to property covered by this coverage.

    b.  **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5.  **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

    a.  "you" or any other insured have willfully concealed or misrepresented:

        1)  a material fact or circumstance that relates to this insurance or the subject thereof; or
        2)  "your" interest herein; or

    b.  there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6.  **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

Copyright, American Association of Insurance Services 2004

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a.  "you" must notify "us" promptly if "you" recover property or receive payment;

   b.  "we" must notify "you" promptly if "we" recover property or receive payment;

   c.  any recovery expenses incurred by either are reimbursed first;

   d.  "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

   a.  all of the "terms" of this coverage have been complied with; and

   b.  the suit has been brought within two years after "you" first have knowledge of the loss.

       If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

Copyright, American Association of Insurance Services 2004

**POLICY NUMBER: KKO0000000391801**
**AAIS**
**IM 7020 04 04**          This endorsement changes the
**Page 1 of 1**            Contractors' Equipment Coverage
                           – PLEASE READ THIS CAREFULLY –

# REPLACEMENT COST ENDORSEMENT

## VALUATION

The Actual Cash Value provision under Valuation is replaced by the following:

**Replacement Cost** -- The value of covered property will be based on the replacement cost at the time of the loss without any deduction for depreciation.

1.  **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar equipment and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

2.  **Replacement Cost Does Not Apply Until Repair Or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.

3.  **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

IM 7020 04 04

Copyright, American Association of Insurance Services, Inc., 2004

POLICY NUMBER: KKO0000000391801
AAIS
CL 0610 01 08
Page 1 of 1

This endorsement changes
the policy
– PLEASE READ THIS CAREFULLY –

# CERTIFIED ACT OF TERRORISM EXCLUSION

1.   The following definition is added.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

a.   to be an act of terrorism;

b.   to be a violent act or an act that is dangerous to human life, property, or infrastructure;

c.   to have resulted in damage:

   1)   within the United States; or
   2)   to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

d.   to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

e.   to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

2.   The following exclusion is added.

**CERTIFIED ACT OF TERRORISM EXCLUSION**

"We" will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

3.   The following provisions are added.

a.   Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:

   1)   exclusions that address war, military action, or nuclear hazard; or
   2)   any other exclusion; and

b.   the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:

   1)   exclusions that address war, military action, or nuclear hazard; or
   2)   any other exclusion.

CL 0610 01 08

Copyright, American Association of Insurance Services, Inc., 2008

**POLICY NUMBER: KKO0000000391801**

| | |
|---|---|
| **AAIS** | This endorsement changes |
| **CL 0121 05 03** | the policy |
| **Page 1 of 2** | – PLEASE READ THIS CAREFULLY – |

# AMENDATORY ENDORSEMENT
## ILLINOIS

1.  Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

    **Cancellation --**

    a.  "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

    b.  "We" may cancel this policy by mailing "our" written notice of cancellation to "you" and any mortgagee or lienholder at the last mailing address known to "us". "Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

    c.  During the first 60 days this policy is in effect, "we" may cancel this policy for any reason. If "we" cancel for any reason other than those listed in d. or e. below, "we" will mail the notice of cancellation 30 days before the effective date of cancellation.

    d.  For policies not issued to cover one- to four-family dwellings, "we" may cancel this policy at any time during the policy period, if the insured property consists of one or more buildings:

        1)  to which, following a fire loss, permanent repairs have not commenced within 60 days after satisfactory adjustment of loss, unless such delay is a direct result of a labor dispute or weather conditions;
        2)  that have been unoccupied for 60 consecutive days, except buildings which have a seasonal occupancy and buildings which are undergoing construction, repair, or reconstruction and are properly secured against unauthorized entry;

        3)  for which, because of their physical condition, there is an outstanding demolition order, or which have been declared unsafe in accordance with applicable law; or
        4)  to which heat, water, sewer service, or public lighting have not been connected for 30 consecutive days or more.

        If "we" cancel this policy for reasons listed under d.1) through d.4) above, cancellation will be effective ten days after "you" and any mortgagee or lienholder have received "our" notice. The notice of cancellation will be sent by regular mail and certified mail, and "your" return premium, if any, will be calculated on a pro rata basis.

    e.  "We" may cancel this policy at any time during the policy period if the premium has not been paid when due. If "we" cancel this policy for non-payment of premium, "we" will mail the cancellation notice at least ten days before the effective date of cancellation.

    f.  If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by "us", "we" may cancel this policy according to the "terms" set forth under item d. or item e. above, or "we" may cancel if one or more of the following reasons apply:

        1)  If this policy covers one- to four-family dwellings used for residential purposes or any personal property incidental to residential occupancies, "we" may cancel this coverage when:

            a)  the policy was obtained by misrepresentation or fraud; or
            b)  there has been an act that measurably increases the risk originally accepted.

**CL 0121 05 03**

Copyright, American Association of Insurance Services, 2003

2) If this policy covers any other type of property, "we" may cancel this coverage when:

    a) the policy was obtained through a material misrepresentation;

    b) any "insured" has violated any of the "terms" and conditions of the policy;

    c) the risk originally accepted has measurably increased;

    d) certification of the Director of the loss of reinsurance which provided coverage to "us" for all or a substantial part of the underlying risk insured; or

    e) a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.

If "we" cancel this policy for any of the reasons listed under f.1) or f.2) above, "we" will mail the cancellation notice at least 60 days before the effective date of cancellation.

g. "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

2. Under Common Policy Conditions, the following condition is added:

**Nonrenewal --**

If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice. "Our" notice will include the reasons for nonrenewal.

3. Under Common Policy Conditions, the following condition is added:

**Renewal --** If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail to "you" written notice of such increase or change in deductible or coverage at least 60 days before the renewal or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice. The 60-day prior notification because of premium increase is not necessary where increases exceeding 30% are due to changed conditions or increased or broadened coverage initiated by "you".

Copyright, American Association of Insurance Services, 2003

**POLICY NUMBER: KKO0000000391801**
**AAIS**
IM 2027 09 06
Page 1 of 1

This endorsement changes
the policy
**— PLEASE READ THIS CAREFULLY —**

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Definitions, item b. of Pollutants is deleted.

2. Under Coverage Extensions, Defense Costs, if applicable, is amended as follows:

   a. Paragraph a. Coverage is deleted and replaced by the following:

      a. **Coverage** -- "We" have the right and duty to defend any "suit" brought against "you" as a result of damage to covered property caused by a covered loss. "We" may investigate and settle a claim or "suit".

   b. Under paragraph d., item 4) is deleted and replaced by the following:

      4) expenses that "you" incur for expert testimony or court-ordered arbitration or mediation;

   c. The following paragraph is added:

      The expenses "we" incur under Defense Costs will not reduce the applicable "limit" for coverage described under Property Covered.

3. Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts is amended to include the following:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

4. Under Other Conditions, Appraisal is amended to include the following:

   If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

5. Under Other Conditions, Misrepresentation, Concealment, Or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, Or Fraud --** "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

6. In all coverage forms except Cold Storage Locker Coverage, Motor Truck Cargo Legal Liability Coverage, and Warehouse Legal Liability Coverage, under Other Conditions, Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

IM 2027 09 06

Copyright, American Association of Insurance Services 2006

**POLICY NUMBER: KKO0000000391801**

| | |
|---|---|
| **AAIS** | This endorsement changes |
| **IM 3009 05 99** | the policy |
| **Page 1 of 1** | **– PLEASE READ THIS CAREFULLY –** |

# AMENDATORY ENDORSEMENT
## ILLINOIS

1.  Under Perils Excluded, if applicable, the following addition amends Criminal, Fraudulent, or Dishonest Acts:

    However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

    a.  arose out of a pattern of criminal domestic violence; and

    b.  the perpetrator of the loss is criminally prosecuted for the act causing the loss;

    this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

    "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

2.  Under Other Conditions, the Appraisal condition is amended by the following addition:

    If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

3.  Under Other Conditions, the Misrepresentation, Concealment, or Fraud condition is deleted and replaced by:

    **Misrepresentation, Concealment, or Fraud --** "We" do not provide coverage for an insured who has:

    a.  willfully concealed or misrepresented:

        1)  a material fact or circumstance with respect to this insurance; or
        2)  an insured's interest herein.

    b.  engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

4.  Under Other Conditions, the Suit Against Us condition is amended by the following addition:

    However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

**IM 3009 05 99**

Copyright, American Association of Insurance Services, 1999

# National Casualty Company

Home Office
Madison, Wisconsin
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

KR-CC-D-1
(04/07)

**Policy No.** KKO0000000391801

## COMMERCIAL CRIME COVERAGE PART DECLARATIONS PAGE

| NAMED INSURED: | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | POLICY PERIOD: 05/07/09 to 05/07/10 |
|---|---|---|

The Crime Coverage Part consists of this Declarations Form, the Commercial Crime Coverage Form.

Employee Benefit Plan(s) Included as Named Insureds:

### INSURING AGREEMENT(S), LIMIT OF INSURANCE AND DEDUCTIBLE

| Insuring Agreement(s) Forming Part of this Coverage Part | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence | Premium |
|---|---|---|---|
| 1. **Employee Theft** | $ 100,000 | $ 1,000 | $ 231 |
| 2. **Forgery Or Alteration** | NOT COVERED | | |
| 3. **Inside The Premises-Theft Of Money and Securities** | $ 30,000 | $ 1,000 | $ 145 |
| 4. **Inside the Premises-Robbery Or Safe Burglary Of Other Property** | NOT COVERED | | |
| 5. **Outside The Premises** | $ 30,000 | $ 1,000 | $ 5 |
| 6. **Computer Fraud** | NOT COVERED | | |
| 7. **Funds Transfer Fraud** | NOT COVERED | | |
| 8. **Money Orders And Counterfeit Paper Currency** | NOT COVERED | | |
| 9. **If Added by Endorsement, or Insuring Agreement(s):** | | | |
| **Additional To Meet Minimum Premium** | | | |
| | | **Total** | $ 381 |

If "Not Covered" is inserted above opposite any specified Insuring Agreement, such Insuring Agreement and any other reference thereto in this policy is deleted.

**PREMIUM**
Premium for This Coverage Part:  $  381
Premium shown is payable:                    at inception:

**FORMS AND ENDORSEMENTS** applicable to all Coverage forms and made part of this policy at time of issue
CR0021(05/06)          CR0202(05/06)

**CANCELLATION OF PRIOR INSURANCE:**
On acceptance of this Coverage Part, you give us notice cancelling prior Policy or Bond Nos.

,the

cancellation to be effective at the time this Coverage Part becomes effective.

CRIME AND FIDELITY
CR 00 21 05 06

# COMMERCIAL CRIME COVERAGE FORM
# (LOSS SUSTAINED FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition **E.1.k.** or **E.1.l.**, which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.**:

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery Or Alteration

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises – Theft Of Money And Securities

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

**a.** We will pay for loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

© ISO Properties, Inc., 2005

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

a. To a person (other than a "messenger") outside those "premises"; or

b. To a place outside those "premises".

**7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

b. "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

1. This insurance does not cover:

a. **Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

(1) You; or

(2) Any of your partners or "members";

whether acting alone or in collusion with other persons.

b. **Acts Of Employees Learned Of By You Prior To The Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

c. **Acts Of Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

(1) Whether acting alone or in collusion with other persons; or

(2) While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

d. **Confidential Information**

Loss resulting from:

(1) The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

(2) The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

 © ISO Properties, Inc., 2005 CR 00 21 05 06

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g. Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**i. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**j. War And Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3., A.4.** and **A.5.** do not cover:

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

 © ISO Properties, Inc., 2005

**f.   Transfer Or Surrender Of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person;

**(c)** As a result of a threat to do damage to any property;

**(d)** As a result of a threat to introduce a denial of service attack into your computer system;

**(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**(g)** As a result of a threat to disseminate, divulge or utilize:

**(i)** Your confidential information; or

**(ii)** Weaknesses in the source code within your computer system.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g.   Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h.   Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

**a.   Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b.   Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c.   Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

**5.** Insuring Agreement **A.7.** does not cover:

**COMPUTER FRAUD**

Loss resulting from the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E.   Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

**1.   Conditions Applicable To All Insuring Agreements**

**a.   Additional Premises Or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

**b.   Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

© ISO Properties, Inc., 2005

CR 00 21 05 06

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**c. Consolidation – Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e. Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Produce for our examination all pertinent records.

**(4)** Give us a detailed, sworn proof of loss within 120 days.

**(5)** Cooperate with us in the investigation and settlement of any claim.

**f. Employee Benefit Plans**

**(1)** The "employee benefit plans" shown in the Declarations (hereinafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

**(2)** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g. Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

 © ISO Properties, Inc., 2005

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j. Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

**(1) Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(a)** Partly during the Policy Period shown in the Declarations; and

**(b)** Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

**(2) Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

**(a)** This insurance became effective at the time of cancellation of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

© ISO Properties, Inc., 2005

CR 00 21 05 06

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

**(3)** In settling loss subject to this Condition:

**(a)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**(4)** The following examples demonstrate how we will settle losses subject to this Condition **E.1.k.**:

**EXAMPLE NO. 1:**

The insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

### POLICY A

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

### POLICY B

Issued prior to Policy **A**. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B** is $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy **A**. The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**1.** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**2.** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**EXAMPLE NO. 2:**

The insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

### POLICY A

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

### POLICY B

Issued prior to Policy **A**. Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B** is $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B**. The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**1.** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.

**2.** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we will pay for this loss is $150,000.

 © ISO Properties, Inc., 2005

**EXAMPLE NO. 3:**

The insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D.**

### POLICY A

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

### POLICY B

Issued prior to Policy **A.** Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

### POLICY C

Issued prior to Policy **B.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

### POLICY D

Issued prior to Policy **C.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy **A** is $350,000, under Policy **B** is $250,000, under Policy **C** is $600,000 and under Policy **D** is $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

2. The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

3. The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

4. We will not make any further payment under Policy **D** as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we will pay for this loss is $1,000,000.

**I.  Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

(1) If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided:

(a) This insurance became effective at the time of cancellation of the prior insurance; and

(b) The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

(2) In settling loss subject to this Condition:

(a) The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

(b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

(3) The insurance provided under this Condition is subject to the following:

(a) If loss covered under this Condition is also partially covered under Condition **E.1.k.,** the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under Condition **E.1.k.**

(b) For loss covered under this Condition that is not subject to Paragraph **(3)(a),** the amount recoverable under this Condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

(i) This insurance as of its effective date; or

(ii) The prior cancelled insurance had it remained in effect.

  © ISO Properties, Inc., 2005  CR 00 21 05 06

**m. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**n. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**o. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**p. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**q. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**r. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

© ISO Properties, Inc., 2005

**s.  Valuation – Settlement**

**(1)** The value of any loss for purposes of coverage under this policy shall be determined as follows:

**(a)** Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(i)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

i. Market value of the "securities" at the close of business on the day the loss was "discovered"; or

ii. The Limit of Insurance applicable to the "securities".

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **s.(1)(c)(i)** through **s.(1)(c)(iii)**, we will not pay on a replacement cost basis for any loss or damage:

i. Until the lost or damaged property is actually repaired or replaced; and

ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We will, at your option, settle loss or damage to property other than "money":

**(a)** In the "money" of the country in which the loss or damage occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(3)** Any property that we pay for or replace becomes our property.

**2.  Conditions Applicable To Insuring Agreement A.1.**

**a.  Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

© ISO Properties, Inc., 2005

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

### b. Territory

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.q.** for a period of not more than 90 consecutive days.

## 3. Conditions Applicable To Insuring Agreement A.2.

### a. Deductible Amount

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

### b. Electronic And Mechanical Signatures

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

### c. Proof Of Loss

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

### d. Territory

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.2.**

## 4. Conditions Applicable To Insuring Agreements A.4. And A.5.

### a. Armored Motor Vehicle Companies

Under Insuring Agreement **A.5.,** we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

### b. Special Limit Of Insurance For Specified Property

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

## 5. Conditions Applicable To Insuring Agreement A.6.

### a. Special Limit Of Insurance For Specified Property

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

### b. Territory

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.6.**

## F. Definitions

**1.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**4.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance

**5.** "Employee":

### a. "Employee" means:

**(1)** Any natural person:

**(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

    **(a)** To substitute for a permanent "employee" as defined in Paragraph **a.(1),** who is on leave; or

    **(b)** To meet seasonal or short-term work load conditions;

    while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **a.(2);**

**(4)** Any natural person who is:

    **(a)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

    **(b)** A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

**(7)** Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy; or

**(8)** Any of your "managers", directors or trustees while:

    **(a)** Performing acts within the scope of the usual duties of an "employee"; or

    **(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

    **b.** "Employee" does not mean:

    Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **5.a.**

**6.** "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**7.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**8.** "Fraudulent instruction" means:

    **a.** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

    **b.** A written instruction (other than those described in Insuring Agreement **A.2.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

    **c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**9.** "Funds" means "money" and "securities".

**10.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**11.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**12.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**13.** "Money" means:

    **a.** Currency, coins and bank notes in current use and having a face value; and

    **b.** Travelers checks, register checks and money orders held for sale to the public.

© ISO Properties, Inc., 2005

14. "Occurrence" means:

    a.  Under Insuring Agreement **A.1.**:

        (1)  An individual act;

        (2)  The combined total of all separate acts whether or not related; or

        (3)  A series of acts whether or not related;

        committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

    b.  Under Insuring Agreement **A.2.**:

        (1)  An individual act;

        (2)  The combined total of all separate acts whether or not related; or

        (3)  A series of acts whether or not related;

        committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

    c.  Under All Other Insuring Agreements:

        (1)  An individual act or event;

        (2)  The combined total of all separate acts or events whether or not related; or

        (3)  A series of acts or events whether or not related;

        committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

    a.  Caused or threatened to cause that person bodily harm; or

    b.  Committed an obviously unlawful act witnessed by that person.

18. "Safe burglary" means the unlawful taking of:

    a.  Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

    b.  A safe or vault from inside the "premises".

19. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

    a.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b.  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

20. "Theft" means the unlawful taking of property to the deprivation of the Insured.

21. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

    a.  By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

    b.  By means of written instructions (other than those described in Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

22. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

 © ISO Properties, Inc., 2005

**POLICY NUMBER:** KKO0000000391801

**CRIME AND FIDELITY**
**CR 02 02 05 06**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION COVERAGE FORM
KIDNAP/RANSOM AND EXTORTION POLICY

**A.** The **Cancellation** Common Policy Condition or the **Cancellation Of Policy** Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **Cancellation Of Policies In Effect 60 Days Or Less**

   **a.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   **b.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **c.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. **60 Days Or More**

   If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any other provision to the contrary:

   **NONRENEWAL**

   If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

   If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

   We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2005

**D.** Under the Commercial Crime Coverage Form, Commercial Crime Policy, Government Crime Coverage Form, Government Crime Policy and Employee Theft And Forgery Policy, the **Legal Action Against Us** Condition is replaced by the following:

**LEGAL ACTION AGAINST US**

You may not bring any legal action against us involving loss:

**1.** Unless you have complied with all the terms of this insurance; and

**2.** Until 90 days after you have filed proof of loss with us; and

**3.** Unless brought within 2 years from the date you "discover" the loss. But we will extend this 2-year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

**E.** Under the Kidnap/Ransom And Extortion Coverage Form and Kidnap/Ransom And Extortion Policy, the **Legal Action Against Us** Condition is replaced by the following:

**LEGAL ACTION AGAINST US**

You may not bring any legal action against us involving loss:

**1.** Unless you have complied with all the terms of this insurance;

**2.** Until 90 days after you have filed proof of loss with us; and

**3.** Unless brought within 2 years from the date you reported the loss to us. But we will extend this 2-year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

© ISO Properties, Inc., 2005

CR 02 02 05 06