# EXHIBIT D

## DECLARATIONS
### EXCESS LIABILITY POLICY
# National Casualty Company

**Policy Number**

XKO0000000392000

Renewal of Number

Home Office:
16 North Carroll Street, Suite 209 • Madison, Wisconsin 53703-2703
Property/Casualty Division:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675

A STOCK COMPANY

---

| ITEM 1. NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| JOLIET PROFESSIONAL BASEBALL CLUB, LLC<br>ONE MAYOR ART SCHULTZ DRIVE<br>JOLIET, IL 60432 | K&K INSURANCE GROUP, INC.<br>1712 MAGNAVOX WAY<br>P.O. BOX 2338<br>FORT WAYNE          IN          46801 |

Agent No. _____      Program No. _____

| ITEM 2. POLICY PERIOD | From:   05/07/08 | To:   05/07/09 |
|---|---|---|

**12:01 A.M. Standard Time at your mailing address.**

---

**ITEM 3.** THE NAMED INSURED IS: ☐ Individual  ☐ Partnership  ☐ Corporation  ☐ Joint Venture  ☒ Other

**ITEM 4.** LIMIT OF INSURANCE:

    A.   Each Occurrence or Accident.................................................................$   9,000,000

    B.   Annual Aggregate where applicable.......................................................$   9,000,000

**ITEM 5.** SCHEDULE OF UNDERLYING INSURANCE:

    See Schedule of Underlying Insurance

**ITEM 6.** PREMIUM COMPUTATION:

    ☒  Flat Premium.................................................................................$   14,925

    ☐  Subject to Adjustment:

        Estimated Deposit Premium...................................................... _____

        Estimated Exposure Base: _____

        Rate: _____      Per: _____

        Policy Minimum Premium........................................................... _____

        Audit Period:  ☐ Annual  ☐ Other: _____

**ITEM 7.** ENDORSEMENTS ATTACHED TO THE POLICY AT INCEPTION: See Schedule of Forms and Endorsements

THE UNDERSIGNED CERTIFIES THAT THIS
PHOTOCOPY WITH THE ENDORSEMENTS
ATTACHED IS A TRUE AND CORRECT COPY
OF THE POLICY COVERAGE IN FULL FORCE
AND EFFECT AS OF THE DATE OF THIS
CERTIFICATION.

_(signature)_ 1/14/10      _(signature)_

**Authorized Representative**

THIS EXCESS LIABILITY DECLARATIONS WITH THE COVERAGE FORM AND ENDORSEMENTS, IF ANY,
COMPLETE THE ABOVE NUMBERED POLICY.

XL-D-1 (12-00)

# National Casualty Company

Home Office:
Madison, Wisconsin
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary

President

The information contained herein replaces any similar information contained elsewhere in the policy.

# National Casualty Company

## SCHEDULE OF UNDERLYING INSURANCE
## EXCESS LIABILITY

Policy No. ___XKO0000000392000___                    Effective Date ___05/07/08___

                                                     12:01 A.M. Standard Time

Named Insured: ___JOLIET PROFESSIONAL BASEBALL CLUB, LLC___    Agent No. _____

| INSURER, POLICY NUMBER AND POLICY PERIOD | TYPE OF COVERAGE | APPLICABLE LIMITS | |
|---|---|---|---|
| **Insurer's Name** NATIONAL CASUALTY COMPANY | **Commercial General Liability** | **Applicable Limits** | |
| | | $1,000,000 | Each Occurrence |
| **Policy Number** 6L KKO-00000003918-00 | | $1,000,000 | Personal and Advertising Injury |
| **Policy Period** 05/07/08   to  05/07/09 | | NONE | General Aggregate (other than products/ completed operations) * |
| * General Aggregate Applies | | $2,000,000 | Products/Completed Operations Aggregate |
| **Insurer's Name** | **Auto Liability** | **Bodily Injury and Property Damage Limit** | |
| | | | Each Accident |
| **Policy Number** | | | |
| **Policy Period** to | | | |
| **Insurer's Name** | **Employer's Liability** | **Bodily Injury Limit** | |
| | | | Each Accident (by accident) |
| **Policy Number** | | | Policy Limit (by disease) |
| **Policy Period** to | | | Each Employee (by disease) |

XL-SP-1 (7-96)

# National Casualty Company

## SCHEDULE OF UNDERLYING INSURANCE
## EXCESS LIABILITY

Policy No.   XKO0000000392000                              Effective Date   05/07/08
                                                           12:01 A.M. Standard Time

Named Insured:   JOLIET PROFESSIONAL BASEBALL CLUB, LLC        Agent No.

| | |
|---|---|
| **Type of Coverage:**  LIQUOR LIABILITY<br><br>**Insurer:**  NATIONAL CASUALTY COMPANY<br><br>**Policy Number:**  6L KKO-00000003918-00<br><br>**Policy Period:** 05/07/08    to   05/07/09 | **Applicable Limits**<br><br>$1,000,000 EACH OCCURRENCE<br>$1,000,000 AGGREGATE |
| **Type of Coverage:**<br><br>**Insurer:**<br><br>**Policy Number:**<br><br>**Policy Period:**                 to | **Applicable Limits** |
| **Type of Coverage:**<br><br>**Insurer:**<br><br>**Policy Number:**<br><br>**Policy Period:**                 to | **Applicable Limits** |
| **Type of Coverage:**<br><br>**Insurer:**<br><br>**Policy Number:**<br><br>**Policy Period:**                 to | **Applicable Limits** |

XL-SP-2 (7-96)

# National Casualty Company

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No.  XKO0000000392000                      Effective Date   05/07/08

                                                               12:01 A.M. Standard Time

Named Insured    JOLIET PROFESSIONAL BASEBALL CLUB, LLC   Agent No.

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | Date Added* Or ST Date Deleted | Form Description |
|---|---|---|---|
| 1. | XL-2330-KR(04/07) | | |
| 2. | XL-P-2(07/96) | | |
| 3. | XL-0530(07/96) | | |
| 4. | XL-1330(07/96) | | |
| 5. | XL-2328-KR(04/07) | | |
| 6. | XL-0270(07/96) | | |
| 7. | UT-119G(01/00) | | |
| 8. | XL-2331-KR(04/07) | | |
| 9. | XL-1423(07/96) | | |
| 10. | UX-0252-IL(12/03) | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |

*If not at inception

**POLICY NUMBER: XKO0000000392000**

# EXCESS LIABILITY COVERAGE FORM

# National Casualty Company

Scottsdale, Arizona

(A Stock Insurance Company, herein called the Company)

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETER-MINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

Throughout this policy, the words "you" and "your" refer to the "Named Insured" shown in the Declarations and any person or organization qualifying as an "Insured" in the "Underlying Insurance." "We," "us," "our" and "Company" refers to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section III) and other provisions of this Policy for such meanings.

In consideration of the payment of premium and in reliance upon the statements in the Declarations and subject to all the terms, conditions, exclusions and endorsements of this Policy, the Company agrees with the "Named Insured" to provide coverage, as follows:

## INSURING AGREEMENTS

### I.  COVERAGE

This Policy is excess insurance and, except as other-wise stated in this Policy, follows the terms, conditions, exclusions, definitions and endorsements of the "Un-derlying Insurance" described in ITEM 5. of the Decla-rations.

A.  We will pay on behalf of the insured those sums in excess of the "Underlying Insurance" which the in-sured becomes legally obligated to pay as dam-ages arising out of an occurrence or accident during the policy period stated in ITEM 2. of the Declarations (the POLICY PERIOD).

B.  We have no other obligation or liability to pay sums or perform services, except as described in Section II, Defense and Supplementary Payments.

C.  If we are prevented by law or statute to pay on be-half of the insured, we will, in accordance with A. and B. above, indemnify the insured for those sums in excess of the "Underlying Insurance."

D.  Where any terms of this Policy conflict with any terms of the "Underlying Insurance," the terms of this Policy shall apply.

E.  Settlement of any claim or suit for an amount in excess of available "Underlying Insurance" by you or any underlying insurer shall not be binding on us unless we consent in writing.

### II.  DEFENSE AND SUPPLEMENTARY PAYMENTS

A.  We will not be obligated to assume the investiga-tion, settlement or defense of any claim made, or suit brought, or proceedings instituted against you. We will, however, have the right to participate in the investigation, settlement or defense of any suit or proceeding which relates to any occurrence or accident that we feel may create liability on our part under the terms of this Policy. We will not de-fend any suit after we have exhausted the applica-ble LIMITS OF INSURANCE as stated in ITEM 4. of the Declarations.

B.  When defense and supplementary payments of:

(1)  Any "Underlying Insurance" reduce the limits of insurance provided by that policy, then any such expense payments made under this Pol-icy will reduce the LIMITS OF INSURANCE provided by this Policy; or

(2) None of the "Underlying Insurance" reduce the limits of insurance provided by those policies, then any such expense payment made under this Policy will not reduce the LIMITS OF INSURANCE provided by this Policy.

C. We will only pay the following expenses:

(1) If the insured becomes legally liable for interest that accrues on a judgment after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable LIMITS OF INSURANCE, then we will pay the interest on the part of the judgment to which this Policy applies.

(2) Expenses incurred directly by this Company and at the sole discretion of this Company.

(3) Pre-judgment interest awarded against the insured on that part of the judgment we pay.

However, if we make an offer to pay the applicable LIMITS OF INSURANCE, prior to judgment, we will not pay any pre-judgment interest that accrues after our offer.

## III. DEFINITIONS

"Underlying Insurance" means any policy or policies of insurance as listed in ITEM 5. of the Declarations including any renewal or replacement of such policies.

## IV. LIMITS OF INSURANCE

A. The LIMITS OF INSURANCE shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

(1) Insureds;

(2) Claims made or suits brought;

(3) Persons or organizations making claims or bringing suits.

B. The Each Occurrence or Accident Limit stated in ITEM 4.A. of the Declarations is the most we will pay for damages arising out of any one occurrence or accident.

C. The Annual Aggregate stated in ITEM 4.B. of the Declarations applies in the same manner as the Aggregate Limits listed on the SCHEDULE OF UNDERLYING INSURANCE, and when applicable, is the most we will pay for all damages under this Policy.

D. The LIMITS OF INSURANCE of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the POLICY PERIOD, unless the POLICY PERIOD is extended after issuance of this Policy for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding POLICY PERIOD for purposes of determining the LIMITS OF INSURANCE.

## V. CONDITIONS

### A. Bankruptcy or Insolvency of Underlying Insurer.

For all purposes of this Policy, if any "Underlying Insurance" is not available or collectible because of (a) the bankruptcy or insolvency of the underlying insurer(s) providing such "Underlying Insurance," or (b) the inability or failure for any other reason of such underlying insurer(s) to comply with any of the obligations of its policy, then this Policy shall apply (and amounts payable thereunder shall be determined) as if such "Underlying Insurance" were available and collectible.

### B. Cancellation.

(1) The first "Named Insured" may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

(2) We may cancel this Policy by mailing or delivering to the first "Named Insured" written notice of cancellation at least:

(a) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(b) 30 days before the effective date of cancellation, if we cancel for any other reason.

(3) We will mail or deliver our notice to the first "Named Insured's" last mailing address known to us.

(4) Notice of cancellation will state the effective date of cancellation and will be effective for all insureds. The POLICY PERIOD will end on that date.

(5) If this Policy is canceled, we will send the first "Named Insured" any premium refund due. If we cancel, the premium refund will be pro rata. If the first "Named Insured" cancels, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if we have not made or offered a refund.

(6) If notice is mailed, proof of mailing will be sufficient proof of notice.

## C. Changes.

This Policy, including the Declarations and any schedules and endorsements attached to the Policy, contains all the agreements between you and us concerning the insurance afforded by this Policy. The first "Named Insured" shown in the Declarations is authorized to make changes in the terms of this Policy, with our consent. This Policy's terms and conditions can be amended or waived only by endorsement issued by us and made a part of this Policy.

## D. Duties in the Event of Occurrence, Accident, Claim or Suit.

(1) You must notify us of any occurrence or accident which may result in a claim or suit under this Policy. Notice shall include:

   (a) How, when and where the occurrence or accident took place;

   (b) The names and addresses of any injured persons and witnesses; and

   (c) The nature and location of any injury or damage arising out of the occurrence or accident.

(2) If a claim is made or suit is brought against any insured that is likely to involve this Policy, you must notify us, in writing, of the claim or suit as soon as practicable.

(3) You and any other involved insureds must:

   (a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with any claim or suit;

   (b) Authorize us to obtain records and other information;

   (c) Cooperate with us in the investigation, settlement or defense of any claim or suit; and

   (d) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of injury or damage to which this insurance may also apply.

(4) No insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## E. Examination of Your Books and Records.

We may examine and audit your books and records as they relate to this Policy at any time during the POLICY PERIOD and for up to three years afterward.

## F. Inspections and Surveys.

We have the right, but are not obligated, to:

(1) make inspections and surveys at any time;

(2) give you reports on the conditions we find; and

(3) recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And, we do not warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This Condition F. applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

## G. Loss Payments.

This Policy will apply after the insured or the insured's underlying insurer has paid or has been held to pay the full amount of the underlying limits of insurance. When the amount of the loss has finally been determined, we will promptly pay on behalf of the insured the amount of loss which is covered under the terms and conditions of this Policy.

**H.  Maintenance of Underlying Insurance.**

(1)  You agree:

(a)  To maintain each policy listed on the SCHED-ULE OF UNDERLYING INSURANCE in full force during the POLICY PERIOD.

(b)  That the limits of liability for each policy listed on the "Underlying Insurance" will not change except for reduction or exhaustion of the aggregate limits of insurance due to payments for occurrences or accidents during the POLICY PERIOD.

(c)  To renew any of the policies on the SCHED-ULE OF UNDERLYING INSURANCE with limits of insurance at least equal to the expiring limits.

(d)  To notify us in writing of any material changes in the "Underlying Insurance" as respects:

(i)  Terms, conditions, exclusions, and endorsements;

(ii)  Coverages;

(iii)  Termination of any coverage; or

(iv)  Exhaustion of aggregate limits.

If you do not meet these requirements, this insurance shall apply as if the "Underlying Insurance" were available and collectible.

If any of the "Underlying Insurance" is canceled, non-renewed, or terminated, coverage under this Policy is automatically terminated on the same effective date and time.

**I.  Other Insurance.**

If there is any other collectible insurance available to the insured (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this Policy, the insurance provided by this Policy will apply in excess of, and shall not contribute with, such insurance. This Condition I. does not apply to any insurance policy purchased specifically (and which is so specified in such insurance policy) to apply in excess of this Policy.

**J.  Premium Computation.**

We will compute all premiums for this Policy in accordance with our rules and rates. Your premium may be flat or adjustable (subject to audit).

If the premium shown in the Declarations is indicated as a flat premium, the premium is not subject to adjustment unless there is a substantial change in type and/or scope of your operations. If there is a substantial change in your operations which results in an additional charge for your "Underlying Insurance," we have the right to charge an additional premium also.

If the premium shown in the Declarations is subject to adjustment, the deposit premium is an advance premium. At the close of each audit period or if this Policy is canceled, we will compute the earned premium. If the earned premium is more than the advance premium, you will pay us the additional premium immediately. If the earned premium is less than the advance premium, we will return the excess premium to you; however, the premium amount shown in the Declarations as the Policy Minimum Premium is the minimum amount we will retain for the POLICY PERIOD.

**K.  Transfer of Rights of Recovery Against Others to Us.**

If any insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing to impair these rights or the transfer thereof to us. The insured will cooperate with us and, at our request will assist in the pursuit and enforcement of those rights.

If there is any money recovered, we will disburse that money, as follows:

(1)  First, we will repay any actual payment made by the insured that is in excess of the "Underlying Insurance";

(2)  Second, we will be repaid to the extent of our actual payment; and

(3)  Third, if any money remains, the insured or any underlying insurer will be repaid to the extent of their actual payment.

If any expenses are incurred to recover money we will share the expenses with the insured or any underlying insurer in proportion to the amount that each is repaid.

If our recovery attempt is not successful, we will bear all of the recovery expenses.

**L.   Transfer of Your Rights and Duties Under this Policy.**

Your rights and duties under this Policy may not be transferred without our prior written consent, except in the case of death of an individual "Named Insured."

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property.

## VI.  NUCLEAR ENERGY LIABILITY EXCLUSION

This Policy does not apply to:

A.   Any injury or damage:

    (1)   With respect to which an insured under this Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2)   Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

        (a)   Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

        (b)   The insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    (3)   Resulting from "hazardous properties" of "nuclear material," if:

        (a)   The "nuclear material":

            (i)   Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or

            (ii)   Has been discharged or dispersed therefrom;

        (b)   The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

        (c)   The bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to property damage to such "nuclear facility" and any property thereat.

For purposes of this Exclusion A, the term "hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material:

(a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

(b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

    (i) Separating the isotopes of uranium or plutonium,

    (ii) Processing or utilizing "spent fuel," or

    (iii) Handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# National Casualty Company

**ENDORSEMENT
NO.**  0000

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF SCHEDULED UNDERLYING POLICIES

This endorsement modifies insurance provided under the following:

### EXCESS LIABILITY COVERAGE FORM

The following condition is added to the Policy:

We shall be furnished a complete copy of each policy described in the Schedule of Underlying Insurance. You shall immediately notify us of any change in the coverage or limits of insurance afforded by any such policy, other than a reduction in any aggregate limit as the result of the payment of a claim or suit. Your failure to do so shall not invalidate this policy but, in the event you fail to report any such change, we shall be liable only to the same extent that we would have been had no change been made.

**This endorsement does not change any other provision of the policy.**

AUTHORIZED REPRESENTATIVE                    DATE

# National Casualty Company

**ENDORSEMENT**
**NO.** ___0000___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEES' RETIREMENT INCOME SECURITY ACT EXCLUSION

This policy does not apply to any liability imposed on the "insured" or the "company," under Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 as now or hereafter amended.

AUTHORIZED REPRESENTATIVE                    DATE

# National Casualty Company

**ENDORSEMENT NO.** _0000_

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ABUSE OR MOLESTATION EXCLUSION

This policy does not apply to any damages arising out of:

(1) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any "insured," or

(2) The negligent:

    (a) Employment;

    (b) Investigation;

    (c) Supervision;

    (d) Reporting to the proper authorities, or failure to so report; or

    (e) Retention;

of a person for whom any "insured" is or ever was legally responsible and whose conduct would be excluded by paragraph (1) above.

AUTHORIZED REPRESENTATIVE        DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984

# National Casualty Company

**ENDORSEMENT
NO.**  _0000_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDATORY ENDORSEMENT
### (Maintenance of Underlying Insurance)

This endorsement modifies insurance provided under the following:

### EXCESS LIABILITY COVERAGE FORM

The last paragraph of subsection **H. Maintenance of Underlying Insurance** is deleted.

AUTHORIZED REPRESENTATIVE                    DATE

# National Casualty Company

**ENDORSEMENT NO.** 0000

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CARE, CUSTODY, OR CONTROL EXCLUSION

This policy does not apply to any damages for property damage to any property:

(1) You own, rent, lease, occupy, or use;

(2) In your care, custody, or control; or

(3) As to which you are for any purpose exercising physical control.

_____          _____
AUTHORIZED REPRESENTATIVE                              DATE

XL-0270 (7-96)

# National Casualty Company

**ENDORSEMENT NO.** __0000__

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than 25 % of the original premium.

_____        _____
AUTHORIZED REPRESENTATIVE        DATE

UT-119g (1-00)

# National Casualty Company

**ENDORSEMENT**
**NO.** ___0000___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SILICA OR RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

### EXCESS LIABILITY COVERAGE FORM

The following exclusion is added to the Policy:

This Policy does not apply to:

a.  Bodily injury, or damages arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust";

b.  Property damage or damages arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust";

c.  Personal injury or advertising injury offense or damages arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust"; or

c.  Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust," by any insured or by any other person or entity.

With respect to this endorsement, the following definitions apply:

1.  "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2.  "Silica-related dust" means a mixture or combination of silica and other dust or particles.

AUTHORIZED REPRESENTATIVE                    DATE

# National Casualty Company

**ENDORSEMENT NO.** ___0000___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED/UNDERINSURED MOTORISTS AND AUTO NO-FAULT EXCLUSION

The following exclusion is added to the policy:

This Policy does not apply to:

Liability imposed on the "insured" or the "company" under any uninsured motorists, underinsured motorists, or auto no-fault or first party liability law.

_____     _____
AUTHORIZED REPRESENTATIVE                        DATE

XL-1423 (7-96)

# National Casualty Company

**ENDORSEMENT
NO.** _0000_

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| XKO0000000392000 | 05/07/08 | JOLIET PROFESSIONAL BASEBALL CLUB, LLC | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION, NONRENEWAL AND RENEWAL—ILLINOIS

The following condition is added to the policy and supersedes any provision to the contrary:

**Cancellation**

a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. If this policy has been in effect for sixty (60) days or less and is not a renewal, we may cancel this policy for any reason by mailing written notice of cancellation to the Named Insured and agent, if any, at last addresses known by us, at least:

(1) Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of premium; or

(2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

c. If this policy has been in effect for more than sixty (60) days, or this is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained through material misrepresentation;

(3) Any of you has violated any of the terms and conditions of the policy;

(4) The risk originally accepted has measurably increased;

(5) Certification to the Director of Insurance of the loss or reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk; or

(6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

d. If this policy is canceled by us based upon the reasons in c. above, we will mail written notice of cancellation at least:

(1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) Sixty (60) days before the effective date of cancellation if we cancel for any other reason;

and such notice will advise the Named Insured of any outstanding premiums, recoveries or earned premium due.

e. We will mail written notice to the Named Insured and to the agent, if any, at the last addresses known to us.

f. Notice of cancellation will state the reason or reasons for cancellation and the effective date of cancellation. Cancellation will be effective for all insureds. The policy period will end on that date.

g. If the policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1997

be the customary short rate proportion. The cancellation will be effective even if we have not made or offered a refund.

h. If notice is mailed, proof of mailing will be sufficient proof of notice.

The following condition is added to the policy and supersedes any provision to the contrary:

**Nonrenewal**

a. If we do not renew this policy, we will mail written notice of nonrenewal to the Named Insured shown in the Declarations and to the agent, if any, at the last addresses known to us. Notice will be mailed at least sixty (60) days before the end of the policy period. The notice will contain the specific reason or reasons for nonrenewal. Proof of mailing will be sufficient proof of notice.

b. Even if we do not comply with these terms, this policy will terminate:

(1) On the expiration date if:

(a) The first Named Insured fails to perform any obligations in connection with the payment of premium for the policy, or any installment payment, whether payable directly to us or the agent or indirectly to any premium finance plan or extension of credit;

(b) We indicated a willingness to renew the policy; or

(c) The first Named Insured has notified the agent or us that he or she does not wish to renew; or

(2) On the effective date of any other insurance replacing this policy.

c. If we fail to comply with the nonrenewal requirements stated in paragraph a. above, we will extend the policy for an additional year or until the effective date of any similar insurance procured by the named insured, whichever is less, on the same terms and conditions as the policy sought to be terminated, unless we have manifested our intention to renew at a different premium that represents an increase not exceeding thirty percent (30%).

The following Condition is added to the policy and supersedes any provision to the contrary:

**Renewal**

a. If we conditionally renew this policy subject to an:

(1) Increased premium of thirty percent (30%) or more exclusive of any premium increase due to and commensurate with any increase in exposure; or

(2) Change in deductible or coverage that materially alters the policy;

we will send written notice of such increase or change in deductible or coverage to the Named Insured shown in the Declarations and to the agent, if any, at least sixty (60) days prior to the renewal or anniversary date. Proof of mailing will be sufficient proof of notice.

b. If we fail to follow any of the provisions of paragraph a. above, the current coverage will remain in effect at the same terms, conditions and premiums of the policy until sixty (60) days after such notice is mailed or delivered.

---

AUTHORIZED REPRESENTATIVE                                                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1997

REPORT END